OPINION
{¶ 1} Defendant-appellant Emmett Leon Brady ("Brady") brings this appeal from the judgment of the Court of Common Pleas of Marion County finding him guilty of two counts of felonious assault, one count of having a weapon while under a disability and a three year firearm specification.
 {¶ 2} On September 21, 2002, Brady went to the home of Cedrick Riley ("Riley") and asked to speak with him. When Riley came to the door, Brady put a gun to Riley's head and another person told Riley that they were going to shoot Riley. Riley reached up to push the gun away and it fired, striking Riley in the fingers. All of the parties then took off running. The police were called and Riley was found with injured fingers. Brady was subsequently arrested and indicted on the above charges. On March 6 and 7, 2003, a jury trial was held. Riley testified at the trial as to what had occurred. The jury then found Brady guilty and the trial court sentenced Brady to a total of 10 years in prison. It is from this judgment that Brady appeals and raises the following assignments of error.
[Brady's] conviction is contrary to the manifest weight of evidence.
Prosecutorial misconduct rendered [Brady's] trial fundamentally unfair in violation of the Constitutions of Ohio and the United States.
The trial court erred in excluding the evidence of the prior shooting of [Riley's] hand and in allowing the witness to remain in the courtroom and participate in the argument regarding the objection.
The trial court erred to the prejudice of [Brady] by permitting the statement of Margo Shelton to be read in its entirety.
The trial court erred to the prejudice of [Brady] by excluding testimony of burglary.
[Brady] received prejudicially ineffective assistance of counsel in violation of his Sixth and Fourteenth Amendment rights, as well as his rights under Section 10, Article I, Ohio Constitution.
The combination of the aforementioned errors are sufficient to call into question the validity of the verdict, preventing [Brady] from obtaining the fair trial guaranteed by the Fifth and Sixth Amendments to the U.S. Constitution as made applicable to the states by theFourteenth Amendment, and Article I, Sections 10 and 16 of the Ohio Constitution.
¶ 3 In the first assignment of error, Brady claims that his conviction is against the manifest weight of the evidence.
Weight of the evidence concerns `the inclination of the greater amountof credible evidence, offered in a trial to support one side of the issuerather than the other. It indicates clearly to the jury that the partyhaving the burden of proof will be entitled to their verdict, if, onweighing the evidence in their minds, they shall find the greater amountof credible evidence sustains the issue which is to be established beforethem. Weight is not a question of mathematics, but depends on its effectin inducing belief.'
State v. Thompkins (1997), 78 Ohio St.3d 380, 387, 678 N.E.2d 514
(citing Black's Law Dictionary (6 Ed. 1990) 1594). A new trial should be granted only in the exceptional case in which the evidence weighs heavily against conviction. Id. Although the appellate court may act as a thirteenth juror, it should still give due deference to the findings made by the jury.
The fact-finder, being the jury, occupies a superior position in determining credibility. The fact-finder can hear and see as well as observe the body language, evaluate voice inflections, observe hand gestures, perceive the interplay between the witness and the examiner, and watch the witness's reaction to exhibits and the like. Determining credibility from a sterile transcript is a Herculean endeavor. A reviewing court must, therefore, accord due deference to the credibility determinations made by the fact-finder.
State v. Thompson (1998), 127 Ohio App.3d 511, 529, 713 N.E.2d 456.
 {¶ 4} In this case, the jury heard testimony from the victim and two other witnesses that Brady had come to Riley's home, pointed a gun at Riley, and that the gun discharged, causing injury to Riley. Riley testified as follows.
A: The Defendant — I turned around defending myself already when I turned around, because I just know something's not right. These dudes are gonna try to beat me half to death or kill me, one of the two. I knew it was coming. I just felt — when you're a man you got those gut instincts that something bad was about to happen. That's how I felt.
Q: Tell the jury what you did with your hands with respect to the gun?
A: I stopped it, I grabbed it. I was pleading for my life more or less, snatching and pulling on it, and Leon was doing the same thing. He was trying to get it away form me. Then the gun went off. That's what I'm saying. Either he pulled the trigger or I made him pull the trigger and I took off running.
Q: When you say "the gun went off," did the bullet strike you.
A: Yes, sir, it did. In my hand right there.
* * *
Q: So the gun's gone off, strikes you in the left hand, and then what did you do?
A: The gun hits the ground. I took off running.
Q: What hit the ground?
A: The gun. It fell. It hit the ground. I was more or less physically fighting him for the gun, and when the gun went off I don't know who was more scared, me or him, because the gun hit the ground. I turned around and I ran. I took off running.
* * *
Q: Did anybody chase you?
A: Yes, sir, the unknown guy.
Q: So not Leon Brady and not Kenny King?
A: No, sir. I didn't see nothing but one person chasing me.
Tr. 219-221.
 {¶ 5} The jury also heard the testimony of Margo Shelton ("Shelton") who testified as follows.
A: Cedrick comes down the steps, and when Cedirck comes down, Mr. Brady grabs him by his arm. Cedrick was putting his pants on when he came down the steps. He didn't get a chance to put his shirt on. Mr. Brady grabbed him by hs arm and yanked him out the door. And pulled a gun out of his pocket, stuck it to Cedrick's head.
* * *
A: The gun fired and there was a struggle, the gun fired, Cedrick managed to pull away and run off the side of the porch into the side yard. And then Mr. Brady took off after him and there was two more shots, and I was trying to get my door shut and get my daughter to safety and call 911.
Tr. 106-108. Additionally, Patrolman Shade testified that both Shelton and Riley independently informed him that Brady was the shooter. Given this testimony, we do not conclude that the jury clearly lost its way and created a manifest miscarriage of justice. The jury could reasonably conclude that Brady was the person who shot Riley. Thus, the first assignment of error is overruled.
 {¶ 6} Brady claims in the second assignment of error that the prosecutor engaged in misconduct by making improper statements during closing argument.[1] Specifically, Brady calls into question (1) the prosecutors comment concerning Marvin Wesley's estimated 17 felony convictions; (2) the prosecutor's argument concerning the blood flow; (3) the prosecutor's claim that blood evidence was found on the porch; and (4) the prosecutor's claim that the lack of spent shells was the result of a revolver rather than a semi-automatic being used.
The applicable standard of review for prosecutorial misconduct "is whether the comments and/or questions by the prosecution were improper, and, if so, whether they prejudiced appellant's substantial rights." * * * However, "the touchstone of analysis is the fairness of the trial, not the culpability of the prosecutor." * * * Thus, "prosecutorial misconduct will not provide a basis for reversal unless the misconduct can be said to have deprived the appellant of a fair trial based on the entire record."
State v. Williams, 10th Dist. Nos. 02AP-730, 02AP-731, 2003-Ohio-5204, at ¶ 52 (citations omitted). This court also notes that none of the alleged errors were objected to at trial. Thus, any challenge is waived unless it rises to the level of plain error.
 {¶ 7} Brady first claims that the prosecutor should not have stated that Marvin Wesley had an estimated 17 felony convictions. Brady argues that the prosecutor learned that Wesley had approximately half of that number of convictions. However, at trial Wesley testified that he "probably" had about seventeen felony convictions. Tr. 460. Thus, the prosecutor's statement was an accurate representation of the testimony of a witness and was not misconduct.
 {¶ 8} Next, Brady argues that the prosecutor committed misconduct by arguing that the blood flow would increase after Riley started running. Testimony was given by Detective Gruber that it would not be unusual not to find large amount of blood evidence at the site of the shooting if the shooting was outside. The detective also testified that the heart would pump the blood faster, causing one to bleed more, after he or she started running. Given this testimony, the prosecutor did not engage in misconduct by characterizing the evidence in conformity with the testimony.
 {¶ 9} Brady also argues that the prosecutor should not have claimed to have blood evidence on the porch when there was no evidence that the one spot of blood found on the porch was human. Testimony was given that the police found a dried spot of blood on the porch. No laboratory testing was done to confirm that it was human blood. However, a field test confirmed that it was blood. The prosecutor merely stated that some blood was found on the porch as well as several other areas. The fact that it may have been something other than human blood was an argument that the defense could make, but it does not make the prosecutor's statement misconduct.
 {¶ 10} Finally, Brady claims that the prosecutor should not have theorized that the gun might have been a revolver rather than a semi-automatic which would eject shell casings. The prosecutor did not argue that it was a revolver, only that it may have been a revolver. The prosecutor also argued that it was possible that it was a semi-automatic and that Brady or one of the other defendants picked up the shell casings, or that they possibly fell outside of the search area. The prosecutor was merely providing the jury with possible explanations as to why the shell casings, if any, were missing. The physical evidence revealed that a 9mm bullet was found. The testimony was that this bullet could be used in either a semi-automatic or a revolver. Thus, the prosecutor had some basis in the evidence for making the argument.
 {¶ 11} Given the testimony in the case, there was some evidence to support each of the prosecutor's arguments. Thus, the arguments were not improper. Brady's counsel had the opportunity to point out the inconsistencies with the prosecutor's theories. Since the arguments were not improper, the prosecutor did not engage in misconduct. The second assignment of error is overruled.
 {¶ 12} The third, fourth, and fifth assignments of error all deal with the admission of evidence. The admission of relevant evidence rests within the sound discretion of the trial court. State v. Myers,97 Ohio St.3d 335, 2002-Ohio-6658, 780 N.E.2d 186. "An abuse of discretion connotes more than an error of law or judgment; it implies that the court's attitude was unreasonable, arbitrary, or unconscionable." Id. at ¶ 75.
 {¶ 13} In the third assignment of error, Brady claims that the trial court erred by excluding testimony regarding a prior shooting of Riley's hand. At trial, Brady attempted to question Shelton concerning a prior injury to Riley's hand. The theory was that someone more dangerous than Brady had injured Riley and Riley was lying about who shot him. The State objected on the basis of Evid.R. 404. Brady argues that the evidence was admissible under Evid.R. 404(2), which permits the character of the victim to be admissible to show that the victim acted according to his/her character. However, the testimony sought to be admitted here was not evidence of Riley's character, but the fact that he had previously been injured by a shot to his right hand. The trial court questioned Shelton about her knowledge of the prior incident and was informed that Shelton was not present when Riley was shot. Her knowledge was limited to information from Riley that he had accidentally discharged a weapon and shot his own hand. The trial court found no relevance of the prior incident to the present case. Additionally, the trial court did not err in permitting the witness to remain in the courtroom during the argument. The trial court wanted to know what the substance of the testimony would be prior to ruling on the motion. The trial court asked Shelton various questions, but did not permit Shelton to make an argument. The record does not reveal that the trial court abused its discretion. Thus, the third assignment of error is overruled.
 {¶ 14} Brady alleges in the fourth assignment of error that the trial court erred by permitting Shelton's statement to the police to be read into the record upon redirect. At trial, Brady questioned Shelton about inconsistencies in her trial testimony and her prior statements made to the police. The State, upon redirect, asked Shelton to read her written statement to the police. Brady objected and the trial court ruled that the State could use the prior statement to rehabilitate the witness by showing that her statement was consistent with her trial testimony. Tr. 148. The basis for Brady's argument was that the prior statement was hearsay. A prior statement of a witness is not hearsay under the following conditions.
(1) Prior statement by witness. The declarant testifies at the trial orhearing and is subject to cross-examination concerning the statement, andthe statement is (a) inconsistent with his testimony, and was given underoath subject to cross-examination by the party against whom the statementis offered and subject to the penalty of perjury at a trial, hearing, orother proceeding, or in a deposition, or (b) consistent with histestimony and is offered to rebut an express or implied charge againsthim of recent fabrication or improper influence or motive, or (c) one ofidentification of a person soon after perceiving him, if thecircumstances demonstrate the reliability of the prior identification.
Evid.R. 801(D).
 {¶ 15} In this case, Brady implied that Shelton's testimony was a fabrication. The State used her prior consistent statement to show that the testimony was not a recent fabrication and to show that she had identified Brady immediately after the event. When used for these purposes, the prior statement of a witness is not hearsay. The fourth assignment of error is overruled.
 {¶ 16} The fifth assignment of error raises the issue of whether the trial court should have permitted Brady to question Riley about the details of a prior burglary in which Riley admitted to being involved. One can question a witness about prior instances of conduct for the purpose of establishing a witnesses truthfulness or lack thereof. Evid.R. 608(B). The Ohio Supreme court has held that the trial court has broad discretion to limit any questioning about prior criminal convictions offered for impeachment under Evid.R. 609 to the nature of the crime, the time and place of the conviction, and the punishment imposed. State v.Robb (2000), 88 Ohio St.3d 59, 723 N.E.2d 1019. "If the trial court may limit the evidence regarding prior convictions in this way, it surely must be permitted to similarly narrow the scope of questions about previous crimes of which the witness has not been convicted." State v.Skatzes, 2nd Dist. No. 15848, 2003-Ohio-516, at ¶ 182.
 {¶ 17} Here, Brady asked Riley if he had been involved in a burglary of Kenny King's home.[2] Riley admitted that he had been involved and testified that he believed that the burglary was the reason why King had wanted to kill Riley and had manipulated Brady into using the gun. Tr. 240-244. There was no conviction on this burglary. Brady then asked Riley who was involved in the burglary with him. At this point, the trial court stopped the questioning and told Brady to move on to another topic. Brady had already gotten the witness to admit to the jury that he was involved in a burglary. The identities of his fellow criminals were not necessary to show the witness's trait for truthfulness. In fact, Brady admits that the purpose behind the question was to show that Riley was involved with criminals, not to show that Riley was dishonest. Thus, the trial court did not err in limiting the questioning after Riley admitted to committing the crime. The fifth assignment of error is overruled.
 {¶ 18} In the sixth assignment of error, Riley claims that he received ineffective assistance of counsel. "Reversal of convictions on ineffective assistance requires the defendant to show `first that counsel's performance was deficient and, second, that the deficient performance prejudiced the defense so as to deprive the defendant of a fair trial.'" State v. Cassano, 96 Ohio St.3d 94, 2002-Ohio-3751,772 N.E.2d 81, at ¶ 105. Upon review, an appellate court must make a strong presumption that counsel's conduct was within the acceptable range of reasonable professional assistance. Id. at ¶ 108. One who claims counsel was ineffective must show that there was a reasonable probability that but for counsel's errors, the result of the trial would have been different. Id.
 {¶ 19} In this case, Brady has argued that trial counsel was ineffective for failing to make objections to evidence and the presence of Shelton during arguments, for failing to add certain vantage points to the jury view, and in not filing any memorandum or making an oral argument at sentencing. At trial, counsel made opening statements, cross-examined witnesses, made objections, presented witnesses, and made a closing argument. The record reveals that counsel's professional assistance was not deficient. In addition, Brady does not show how the alleged errors were prejudicial to him. This court has ruled that the presence of Shelton during the arguments was not prejudicial. The trial court instructed the jury that the observations made during the jury view were not evidence. The jury view is only done to provide the jury with a frame of reference from which to judge the evidence presented at trial. Thus any error in not having the jury see a certain vantage point is not prejudicial because it was not evidence. Finally, the failure to make an argument at sentencing is not related to Brady's conviction, only his sentencing. No error has been raised as to the sentence received. Thus, the record does not disclose that counsel was ineffective. The sixth assignment of error is overruled.
 {¶ 20} The final assignment of error is that the cumulative effect of the above claimed errors denied Brady a fair trial. "Pursuant to the doctrine of cumulative error, a conviction will be reversed where the cumulative effect of multiple errors deprives a defendant of her constitutional right to a fair trial, even though each individual error does not constitute cause for reversal. State v. Maldonado, 9th Dist. No. 01CA007924, 2002-Ohio-22, 2002-Ohio-2205, at ¶ 8. "Nevertheless, a defendant's claim of cumulative error is without merit in instances where prejudicial error is nonexistent." Id. (citing Statev. Garner (1995), 74 Ohio St.3d 49, 656 N.E.2d 623). In this case, there was no error found. Thus, the cumulative effect is not prejudicial. The seventh assignment of error is overruled.
 {¶ 21} The judgment of the Court of Common Pleas of Marion County is affirmed.
Judgment affirmed.
WALTERS and SHAW, JJ., concur.
[1] Counsel alleges that the prosecutor engaged in misconduct "in several ways during the trial." However, the only instances cited are statements made during the closing argument. Thus, we need only address those alleged errors raised by counsel.
[2] King was a co-defendant of Brady.