OPINION
{¶ 1} Appellant, State of Ohio, appeals the judgment of the Court of Common Pleas, Union County, Ohio, dismissing the indicted charges against Defendant-appellee, Richard F. Sommerfield. The trial court held that R.C. 2950.04, which requires convicted sex offenders to register with their local sheriff's department, was unconstitutional as applied to Sommerfield. For the reasons that follow, we reverse the trial court's decision.
 {¶ 2} The central question in this case is whether Sommerfield is a "resident" of Marysville, Union County, Ohio, and therefore whether he was required to register as a sexual offender in Union County. The underlying facts of the case are as follows. Sommerfield had pled guilty to two counts of rape in 1979. Pursuant to the provisions of R.C. 2950.09(C)(2)(a), the court was required to conduct a hearing within one year to determine whether Sommerfield should be classified as a sexual predator. However, no hearing took place, and accordingly Sommerfield was designated a sexually oriented offender by operation of law. Because of his previous conviction and his designation as a sexually oriented offender, Sommerfield stipulated in the proceedings below that he was required to register as a sex offender.
 {¶ 3} Upon his release from prison, Sommerfield purchased a residential home in Delaware County, Ohio in 2003 and promptly registered with the Delaware County Sheriff's Office. He remained registered with that office throughout the time period relevant to these proceedings, and never filed a change of address notification with that office. The record indicates that Sommerfield continues to own that property and is still registered as a sex offender in Delaware County. In fact, Sommerfield was informed of changes to the sex offender registration law by the Delaware County Sheriff's Office, and at that time he did not inform that office of any changes to his place of residence.
 {¶ 4} In 2004, Sommerfield met Linda Allen, a resident of Marysville, Union County, Ohio, and they were later married in February 2005. Sommerfield began spending a significant portion of time at Allen's residence in Marysville, triggering the issues involved in this appeal. The State contends that Sommerfield had established a "residence" at Allen's home, and therefore he was required to register as a sex offender in Union County pursuant to R.C. 2950.04, which provides:
(A)(1) Each of the following types of offender who isconvicted of or pleads guilty to, or has been convicted of orpleaded guilty to, a sexually oriented offense that is not aregistration-exempt sexually oriented offense shall registerpersonally with the sheriff of the county within five days of theoffender's coming into a county in which the offender resides ortemporarily is domiciled for more than five days, * * * [.]
 {¶ 5} The State presented a litany of evidence indicating that Sommerfield was not staying at his residence in Delaware County, and had instead established a "residence" with Allen in Marysville. His neighbors in Delaware testified that they saw him and his vehicle frequently at his home in Delaware prior to June 2004; however, he was not often seen at his home thereafter. They rarely saw lights on at his home, his lawn was left unmanaged, and his vehicle was not seen after June 2004.
 {¶ 6} On the other hand, the State presented evidence and testimony that Sommerfield had begun living with Allen in Union County; one of her neighbors, Robert Dietsch testified that Sommerfield was living at her home twenty-four hours a day, seven days a week during June 2004 and at various times in the months thereafter. Dietsch testified that Sommerfield had specifically told him that he was living with Allen because he had hurt his back; Sommerfield wore a back brace and was not working at that time. When Sommerfield did return to work, Mrs. Dietsch testified that he would leave in his vehicle in the morning and return the same evening. The Dietsch's daughter, who was also a friend of Darcy Allen, testified that she saw Sommerfield at the Allen residence on a daily basis, and that he was eating, watching TV, making dinner, changing clothes, and spending the night at the house. Other neighbors testified that they often saw Sommerfield's vehicle at Allen's residence, but they could not say whether he was present at the home.
 {¶ 7} For his part, Sommerfield claims that he hurt his back when he fell off of a roof, and his injuries precluded him from doing many of life's daily activities. He indicates that he was hospitalized for a brief period in 2004, after which he lived with various family and friends, including Allen, during his recovery. Allen testified that Sommerfield would stay with her for a few days, and then would stay with his sister or his mother at their homes in Franklin, County. Allen and her daughter, Darcy, also testified that Sommerfield did not have a key to the Allen residence, and did not keep clothes there or personal items there. Sommerfield explains his vehicle's presence at the house in Marysville by claiming that when he was well enough to return to work, his duties would often require travel and he would leave his vehicle at Allen's home. Ultimately, Sommerfield argues that he never established a residence at Ms. Allen's home in Union County, that he stayed there as a guest on various occasions, but that this does not amount establishing a "residence" or "temporary domicile" for purposes of R.C. 2950.04.
 {¶ 8} The Union County Sheriff's Office arrested Sommerfield after Dietsch notified them that Sommerfield was living at the Allen residence. Dietsch had learned that Sommerfield had spent eighteen years in prison, and had found Sommerfield's name during a search of the Electronic Sex Offender Registration and Notification ("ESORN") network. Dietsch told the Sheriff's Office that Sommerfield had been living with Allen for seven months. The Sheriff's Office arrested Sommerfield after they observed his truck parked at the Allen's residence throughout the day and early morning hours of January 13-14, 2005. They served an arrest warrant on Sommerfield at the Allen residence on January 17, 2005.
 {¶ 9} Both Sommerfield and Allen have admitted that he stayed at her house in excess of five days at various points throughout 2004. Sommerfield admitted to the sheriff's deputy that he was at the home seven days a week and often spent three, four, or five nights a week at the home. However, he denies ever staying there five consecutive days and nights.
 {¶ 10} Sommerfield entered a plea of not guilty to a charge of one count of failure to register as a sex offender pursuant to R.C. 2950.04, a third degree felony. A three day trial was held before a jury in April 2005, but the jury was unable to reach a unanimous verdict. The jury submitted questions to the court, asking the court to further clarify the meaning of "temporary domicile" and the correct interpretation of the five day requirement in R.C. 2950.04(A)(1). The court felt it could not give further instruction on those issues, and thereafter granted a motion to dismiss the charge filed by Sommerfield. The trial court found that under the statute, it was impossible to determine whether the language "more than five days" referred to in the statute "meant `more than five consecutive days' or meant `more than five days residency in a lifetime.'" Therefore, the court found the statute impermissibly vague because it was impossible to determine the exact point at which he was required to register. The court accordingly declared the statute unconstitutional as applied to Sommerfield.
 {¶ 11} The State now appeals, asserting one assignment of error:
The trial court committed error in finding Ohio Revised Code2950.04 unconstitutional as being impermissibly vague.
 {¶ 12} In this assignment of error, the State contends that the trial court erred in dismissing the charge against Sommerfield and finding R.C. 2950.04 void for vagueness as applied to him. Before this court, Sommerfield argues that R.C.2950.04 is unconstitutionally vague in two respects: (1) the statute does not specifically define "residence" or "temporary domicile," and (2) the statute does not qualify what the language "more than five days" means.
 {¶ 13} At the outset, we note that there is a strong presumption that Ohio statutes are constitutional. State v.Collier (1991), 62 Ohio St.3d 267, 269, 581 N.E.2d 552; Stateex re. Jackman v. Cuyahoga Cty. Court of Common Pleas (1967),9 Ohio St.2d 159, 161-62, 224 N.E.2d 906. The party asserting that the legislative enactment is unconstitutional must rebut this presumption by establishing beyond a reasonable doubt that the statute is unconstitutional. State v. Williams (2000),88 Ohio St.3d 513, 521, 728 N.E.2d 342 (citations omitted).
 {¶ 14} There are two prongs to a void-for-vagueness analysis. First, a criminal statute may be unconstitutionally vague if "men of common intelligence must necessarily guess at its meaning and differ as to its application." State v. Glover (1984),17 Ohio St.3d 256, 257, 479 N.E.2d 901 (quoting Connally v. Gen. Constr.Co. (1926), 269 U.S. 385, 391); see also State v. Anderson
(1991), 57 Ohio St.3d 168, 171, 566 N.E.2d 1224 (a statute is vague if "an individual of ordinary intelligence would not understand what he is required to do under the law"). Second, a legislative enactment will also be unconstitutionally vague if it authorizes or encourages arbitrary and discriminatory conduct.City of Chicago v. Morales (1999), 527 U.S. 41, 56,119 S.Ct. 1849; Grayned v. Rockford (1972), 408 U.S. 104, 108.
 {¶ 15} The key under the first prong of the analysis is whether the statute provides adequate notice as to what conduct is prohibited. Morales, 527 U.S. at 56-57. "The purpose of the fair notice requirement is to enable the ordinary citizen to conform his or her conduct to the law." Id. at 58. Thus, the statute will be vague when it fails to provide fair warning.Grayned, 408 U.S. at 108.
 {¶ 16} However, a statute will not be considered void for vagueness merely because the legislature could have drafted its language with more precision. State v. Dorso (1983),4 Ohio St.3d 60, 61, 446 N.E.2d 449; see, also, Roth v. United States
(1957), 354 U.S. 476, 491, 77 S.Ct. 1304. "A statute will not be found void for vagueness if any `reasonable and practical construction' can be given to its language." Baughman v. Dept.of Pub. Safety Motor Vehicle Salvage (1997),118 Ohio App.3d 564, 574, 693 N.E.2d 851 (quoting Lyle Constr., Inc. v. Div. ofReclamation (1987), 34 Ohio St.3d 22, 24, 516 N.E.2d 209, 211). The Supreme Court of the United States has noted that a statute is not unconstitutionally vague merely because it fails to define specific terms: "many statutes will have some inherent vagueness, for in most English words and phrases there lurk uncertainties. Even trained lawyers may find it necessary to consult legal dictionaries, treatises, and judicial opinions before they may say with any certainty what some statutes may compel or forbid."Rose v. Locke (1975), 423 U.S. 48, 50 (citations and internal quotations omitted). Thus, a statute is not vague if the meaning of words can be ascertained from these sources or, for words in common usage, from the meaning commonly attributed to them. SeeGlover, 17 Ohio St.3d at 258 (citations omitted); Jeandell v.State (2005), 165 Md.App. 26, 884 A.2d 739.
 {¶ 17} Sommerfield first argues that R.C. 2950.04 is unconstitutional because "residence" and "temporary domicile" are not statutorily defined. While R.C. 2950.04 has survived numerous vagueness challenges, see Williams, supra, 88 Ohio St.3d 513, no Ohio court has specifically addressed this argument. However, the Court of Special Appeals of Maryland recently addressed a similar attack on its sex offender registration statute, and found that the statute was not unconstitutionally vague.Jeandell, 165 Md.App. at 34-39. We likewise find that the statute's use of the terms "residence" and "temporary domicile" do not render it unconstitutionally vague.
 {¶ 18} The term "residence," though it has been statutorily defined in various contexts, has a commonly accepted meaning — one's residence is the place where one actually lives. Id. Black's Law Dictionary (8th Ed. 2004) defines "residence" as:
1. The act or fact of living in a given place for some time* * *. 2. The place where one actually lives as distinguished fromdomicile * * *. Residence usually just means bodily presenceas an inhabitant in a given place; domicile usually requiresbodily presence plus an intention to make the place one's home.
Since the legislature chose not to provide a specific definition of the term in R.C. 2950.04, the term is construed with its ordinary meaning. Glover, 17 Ohio St.3d at 258. As noted in Black's definition of "residence," the general distinction between "residence" and "domicile" is that "domicile" incorporates an intention to return; while someone can have more than one residence an individual can only have one domicile. See also Board of Ed. of City School Dist. of City of Oakwood v.Dille (1959), 109 Ohio App. 344, 348, 165 N.E.2d 807
(distinguishing between "residence" and "domicile," and noting "two fundamental characteristics of a person's domicile are that it is single and continuing — that is to say, a person can have but one domicile at a given time, and such domicile continues until another is established"). Black's defines "domicile" as "a person's true, fixed, principal, and permanent home, to which that person intends to return and remain even though currently residing elsewhere." Black's Law Dictionary (8th Ed. 2004). These are the commonly accepted definitions of the two terms.
 {¶ 19} In addition to their commonly accepted meanings, we can ascertain the meaning of these terms from the context of the statute. Glover, 17 Ohio St.3d at 258; Jeandell,165 Md.App. at 36. While both "residence" and "temporary domicile" may have unique and technical definitions in various other contexts, it is clear that, as used in R.C. 2950.04, the legislature intended the terms to have their commonly accepted legal meanings. The legislature clearly announced its purpose in enacting Chapter 2950 in R.C. 2950.02(B): "it is the general assembly's intent to protect the safety and general welfare of the people of this state" by requiring registration for sex offenders "who * * * will live in or near a particular neighborhood." Thus, the clear intent of the registration requirement is to discern where sex offenders are currently residing so as to inform the general public. In this context, the clear intent of the statute is to have sex offenders register in a county in which they are living or maintain a permanent dwelling.
 {¶ 20} Therefore, it is reasonable and practical to conclude that the legislature intended to give the terms "residence" and "domicile" their general legal definitions. Accordingly, we find that R.C. 2950.04(A) gives sex offenders adequate notice in terms of what places of inhabitance fall under the statute requiring the individual to register.
 {¶ 21} Sommerfield also argues that R.C. 2950.04 is vague because it is impossible to ascertain what the language "more than five days" means. Specifically, in the instant case the jury's question to the court was whether or not the statute required the person to register after residing in the location for five consecutive days or simply five days total in one's lifetime.
 {¶ 22} The phrase in question is certainly ambiguous — the language does not specify which if these two meanings is applicable. However, the language "for more than five days," though seemingly ambiguous, is clarified when read in context of the entire statute. "Even if the words are ambiguous, a `holistic approach' to statutory construction confirms that a seemingly indistinct provision `is often clarified by the remainder of the statutory scheme.'" Rice v. Certainteed Corp. (1999),84 Ohio St.3d 417, 419-20, 704 N.E.2d 1217 (quoting United Sav. Assn. ofTexas v. Timbers of Inwood Forest Assoc., Ltd. (1988),484 U.S. 365, 371, 108 S.Ct. 626).
 {¶ 23} The statute requires the offender to register "withinfive days of the offender's coming into a county in which the offender resides or temporarily is domiciled for more than fivedays * * *." R.C. 2950.04(A)(1). This cannot mean that a person must register after residing in one place for five total days in a lifetime. On the one hand, Sommerfield points out that such an interpretation of the statute would lead to an absurd result — if a person stayed at the same hotel when frequently traveling to an Ohio city on business that person would have to register after staying at the hotel for the fifth time. Since the person would be currently "living" at the hotel for each of the five days he spent there, he would have to register under the statute. In other words, if the later language conditioning registration on residing in the county for more than five days means "five days in a lifetime," the offender could never be sure if he would have to register because he would never know whether or not he may happen to come back to that place four more times in his lifetime. This is clearly not the intended purpose of the statute.
 {¶ 24} More importantly, interpreting the statute to mean "more than five days in a lifetime" is not viable. The statute requires the affirmative act of registering "within five days ofcoming into the county." R.C. 2950.04(A)(1) (emphasis added). This means that the offender must register within five days ofthe first day spent residing or being temporarily domiciled in the county. Thus, the requirement to register is predicated on the offender residing in the county for more than five days, but the act of registering is mandated to occur within five daysof the first day. Put another way, the offender must register within five days of coming into the county, but only if he has resided in the county for five days. The only possible way these two conditions can be reconciled is if the statute means "five consecutive days."
 {¶ 25} Based on the foregoing, we find that there is a reasonable and practical construction of the language in R.C.2950.04(A)(1), and therefore the statute gives adequate notice of the duty to register and when registration must occur. There is only one plausible interpretation of the language requiring the offender to register within five days — that they be five consecutive days. Moreover, the statute does not authorize or encourage arbitrary enforcement, because enforcement is mandated as soon as the offender fails to register. Accordingly, being mindful of the presumption of constitutionality, we find that R.C. 2950.04 is not unconstitutionally vague. The assignment of error is sustained, the judgment of the trial court dismissing the charges against Sommerfield is reversed, and the cause remanded for further proceedings consistent with this opinion.
Judgment reversed and cause remanded.
 Bryant, P.J., and Cupp, J., concur.