OPINION *Page 2 
{¶ 1} Defendant-appellant Richard F. Sommerfield ("Sommerfield") brings this appeal from the judgment of the Court of Common Pleas of Union County finding him guilty of failing to register as a sexually oriented offender pursuant to R.C. 2950.04(E).
 {¶ 2} On February 3, 2005, the Union County Grand Jury indicted Sommerfield on one count of failure to register as a sexually oriented offender pursuant to 2950.04(E), a felony of the third degree. A jury trial was held in April 2005, but resulted in a mistrial with the trial court dismissing the case after determining the statute with which Sommerfield was charged was void for vagueness. The State appealed the judgment. On March 27, 2006, this court reversed the judgment of the trial court. On January 16 and 17, 2007, a second jury trial was held. On January 18, 2007, the jury returned a verdict of guilty. The trial court immediately sentenced Sommerfield to two years imprisonment followed by a five year period of post-release control. Sommerfield appeals from this judgment and raises the following assignments of error.
 In violation of due process, the guilty verdict was entered against the manifest weight of the evidence.
 Instances of prosecutorial misconduct, which occurred throughout the jury trial, deprived [Sommerfield] of his right to a fair trial. *Page 3 
 Sommerfield's conviction for failure to register as a sex offender violates due process because R.C. 2950.04 is unconstitutionally vague.
 The trial court erred in imposing a prison sentence in excess of the minimum, not commensurate with the seriousness of [Sommerfield's] conduct and that deprives him of his Sixth Amendment right to a trial by jury.
 {¶ 3} Sommerfield's first claim is that the judgment is against the manifest weight of the evidence.
 Weight of the evidence concerns "the inclination of the greater amount of credible evidence, offered in a trial to support one side of the issue rather than the other. It indicates clearly to the jury that the party having the burden of proof will be entitled to their verdict, if, on weighing the evidence in their minds, they shall find the greater amount of credible evidence sustains the issue which is to be established before them. Weight is not a question of mathematics, but depends on its effect in inducing belief."
State v. Thompkins (1997), 78 Ohio St.3d 380, 387, 678 N.E.2d 514
(citing Black's Law Dictionary (6 Ed.1990) 1594). A new trial should be granted only in the exceptional case in which the evidence weighs heavily against conviction. Id. Although the appellate court may act as a thirteenth juror, it should still give due deference to the findings made by the fact-finder.
 The fact-finder * * * occupies a superior position in determining credibility. The fact-finder can hear and see as well as observe the body language, evaluate voice inflections, observe hand gestures, perceive the interplay between the witness and the examiner, and watch the witness's reaction to exhibits and the like. Determining credibility from a sterile transcript is a Herculean endeavor. A reviewing court must, therefore, accord *Page 4 due deference to the credibility determinations made by the fact-finder.
State v. Thompson (1998), 127 Ohio App.3d 511, 529, 713 N.E.2d 456.
 {¶ 4} Sommerfield was charged with a violation of R.C. 2950.04 which provides in pertinent part as follows:
 (A)(1) Each of the following types of offender who * * * has been convicted of or pleaded guilty to, a sexually oriented offense that is not a registration-exempt sexually oriented offense shall register personally with the sheriff of the county within five days of the offender's coming into a county in which the offender resides or temporarily is domiciled for more than five days * * *.
 ** *
 (E) No person who is required to register pursuant to divisions (A) and (B) of this section * * * shall fail to register * * * as required in accordance with those divisions * * *.
R.C. 2950.04.
 {¶ 5} A review of the record in this case indicates that several witnesses testified either that Sommerfield was no longer seen at his own house in Delaware County and was rarely seen there after June 2004, or that Sommerfield was seen frequently staying at his fiance's home in Union County. Testimony was given by multiple witnesses that Sommerfield would be there everyday, that he would spend the night and then would sound his truck's horn as he left for work the following day. One neighbor of the Union County residence testified that Sommerfield was always there and that he had indicated that he was staying *Page 5 
there since he hurt his back. Tr. 104. He further testified that Sommerfield was at the Union County address seven days a week, that he was there every evening, and that he left between 5:30 a.m. and 5:45 a.m.. Tr. 112. This testimony was corroborated by other witnesses. Tr. 139, 148. Sommerfield's wife testified that "there may have been periods of time where it was five days in a row. Tr. 246. Deputy Golden testified that Sommerfield admitted to spending the night at the Union County residence for five nights a week and that he was there everyday. Tr. 176. Given all of this evidence, this court does not find that the evidence weighs heavily against conviction. Therefore, the first assignment of error is overruled.
 {¶ 6} Next, Sommerfield claims that the instances of prosecutorial misconduct denied him a fair trial. Specifically, Sommerfield claims that the prosecutor engaged in misconduct by 1) improperly vouching for the credibility of a witness during closing arguments, 2) by appealing to the jury's emotions by implying that Sommerfield was a pedophile, and 3) by making numerous improper remarks throughout the trial.
 The applicable standard of review for prosecutorial misconduct "is whether the comments and/or questions by the prosecution were improper, and, if so, whether they prejudiced appellant's substantial rights." * * * However, "the touchstone of analysis is the fairness of the trial, not the culpability of the prosecutor." * * * Thus, prosecutorial misconduct will not provide a basis for reversal unless the misconduct can be said to have deprived the appellant of a fair trial based on the entire record." *Page 6 
State v. Brady, 3rd Dist. No. 9-03-27, 2003-Ohio-6005, ¶ 6. Additionally, if no objections are made to the alleged misconduct, it must be reviewed under a plain error standard. Id.
 {¶ 7} Sommerfield claims that the prosecutor improperly vouched for the credibility of the state's witnesses. Tr. Vol II, 98-102, 124. A review of the record indicates that the prosecutor merely mentioned various factors to consider when weighing credibility and then applied those factors to his witnesses. He did not improperly vouch for their credibility. Thus there is no misconduct for these statements.
 {¶ 8} Sommerfield next claims that the prosecutor engaged in misconduct by implying that Sommerfield is a pedophile. Specifically, the statements at issue are as follows.
 Q. Ma'am, aside from that one incident, is there anything that you did after learning about Mr. Sommerfield's past as far as your children were concerned?
 A. They — we just told them that they were not allowed to be outside, you know, alone individually. That they needed to be in pairs and actually to come in if they saw him out in the yard.
Tr. 78-79.
 Q. And, sir, ultimately did you learn about Mr. Sommerfield's past?
 A. Yes, we did. Sometime between Thanksgiving and Christmas in 2004 Darcy was basically in our house, again, with Elaine *Page 7 talking about how her grandparents had found out about Mr. Sommerfield's background.
 Q. And did that concern you?
 A. Yes. At that time we didn't know that he was a sex offender. We knew that he had a criminal past and had spent 18 years in prison. So we became concerned and we stopped Elaine from having sleep overs at that house.
Tr. 108
 And what did [the witness] tell you? She said I was aware of his record and I have children.
Tr. Vol. II, 102. All of these statements were irrelevant to the case as they did not allege any facts which would help the jury determine whether or not Sommerfield was "residing" in Union County rather than Delaware County. These questions were made to elicit responses which indicated that Sommerfield was a danger to children, a claim that is not supported by the record and is irrelevant to the issue before the jury. Thus, these questions were improper. However, no objection was made to them and they do not rise to the level of plain error.
 {¶ 9} Finally, Sommerfield claims the prosecutor engaged in various other forms of misconduct throughout the trial. He claimed that the prosecutor improperly commented on his statement to his family to not say anything to the police. "[I]f there was nothing to hide, why would he say don't talk to them?" Tr. Vol 2, 104. The reason behind Sommerfield's request could have been any *Page 8 
number of things, such as a general distrust of the police. Thus, the prosecutor's statement was speculative and improper. However, again, it does not rise to the level of plain error as there is no showing that absent the error, the verdict would be different.
 {¶ 10} Although some improper statements and arguments were made, there is no indication in the record that but for those improper statements; the result of the trial would have been different. Thus, there is no plain error. The second assignment of error is overruled.
 {¶ 11} Sommerfield's third assignment of error claims that his conviction violates due process because R.C. 2950.04 is unconstitutionally vague. Sommerfield's argument is based upon the claim that the statute fails to provide fair warning as to what conduct would trigger the duty to register in additional counties. Specifically, he claims that the statute fails to identify when a new residence or temporary domicile is established. There is a strong presumption that Ohio statutes are constitutional. State v. Collier (1991),62 Ohio St.3d 267, 269, 581 N.E.2d 552. The party asserting that the legislative enactment is unconstitutional must rebut this presumption by establishing beyond a reasonable doubt that the statute is unconstitutional. State v. Williams (2000), 88 Ohio St.3d 513, 521,728 N.E.2d 342. *Page 9 
 {¶ 12} To determine whether a statute is void for vagueness, two questions must be considered. First, a criminal statute may be unconstitutionally vague if "men of common intelligence must necessarily guess at its meaning and differ as to its application." State v.Glover (1984), 17 Ohio App.3d 256, 257, 479 N.E.2d 901. Second, a legislative enactment will be unconstitutionally vague if it authorizes or encourages arbitrary and discriminatory conduct. State v. SommerfieldI, 3rd Dist. No. 14-05-23, 2006-Ohio-1420.
 {¶ 13} The first question requires a court to determine whether the statute provides adequate notice as to what conduct is prohibited.City of Chicago v. Morales (1999), 527 U.S. 41, 119 S.Ct. 1849,144 L.Ed.2d 67. This question has previously been addressed by this court inSommerfield I, supra. "The purpose of the fair notice requirement is to enable the ordinary citizen to conform his or her conduct to the law." Id. at 58. Thus, a statute will be vague when it fails to provide fair warning. Grayned v. Rockford (1972), 408 U.S. 104, 92 S.Ct. 2294,33 L.Ed.2d 222. However, a statute will not be considered void for vagueness merely because the legislature could have drafted its language with more precision. State v. Dorso (1983), 4 Ohio St.3d 60, 61,446 N.E.2d 449. "A statute will not be found void for vagueness if any `reasonable and practical construction' can be given to its language."Baughman v. Dept. of Pub. Safety Motor Vehicle Salvage (1997),118 Ohio App.3d 564, 574, 693 N.E.2d 851 *Page 10 
(quoting Lyle Constr., Inc. v. Div. of Reclamation (1987),34 Ohio St.3d 22, 24, 516 N.E.2d 209, 211). A statute is not unconstitutionally vague merely because it fails to define specific terms"
 [M]any statutes will have some inherent vagueness, for in most English words and phrases there lurk uncertainties. Even trained lawyers may find it necessary to consult legal dictionaries, treatises, and judicial opinions before they may say with any certainty what some statutes may compel or forbid.
Rose v. Locke (1975), 423 U.S. 48, 50 96 S.Ct. 243, 46 L.Ed.2d 185
(citations and internal quotations omitted). Thus, a statute is not vague if the meaning of words can be ascertained from these sources or, for words in common usage, from the meaning commonly attributed to them.Glover, supra 258.
 {¶ 14} Sommerfield argues that R.C. 2950.04 is unconstitutional because it does not indicate when a new residence or temporary domicile is established. The term "residence" is commonly accepted as meaning the place where one actually lives.
 {¶ 15} Since the legislature chose not to provide a specific definition of the term in R.C. 2950.04, the term is construed with its ordinary meaning. Glover, supra at 258. The general distinction between "residence" and "domicile" is that "domicile" incorporates an intention to return. Sommerfield I, supra at ¶ 18. While someone can have more than one residence an individual can only have one domicile. SeeBoard of Ed. of City School Dist. of City of Oakwood v. Dille *Page 11 
(1959), 109 Ohio App. 344, 165 N.E.2d 807 (distinguishing between "residence" and "domicile," and noting "two fundamental characteristics of a person's domicile are that it is single and continuing — that is to say, a person can have but one domicile at a given time, and such domicile continues until another is established"). Black's defines "domicile" as "a person's true, fixed, principal, and permanent home, to which that person intends to return and remain even though currently residing elsewhere." Black's Law Dictionary (8th Ed. 2004).
 {¶ 16} While both "residence" and "temporary domicile" may have unique and technical definitions in various other contexts, the legislature clearly intended the terms to have their commonly accepted legal meanings when used in R.C 2950.04. The legislature announced its purpose in enacting Chapter 2950 in R.C. 2950.02(B): "it is the general assembly's intent to protect the safety and general welfare of the people of this state" by requiring registration for sex offenders "who * * * will live in or near a particular neighborhood." Thus, the clear intent of the registration requirement is to have sex offenders register in a county in which they are living or maintain a permanent dwelling.Sommerfield I, supra at ¶ 19. Accordingly, R.C. 2950.04(A) gives sex offenders adequate notice in terms of what places of inhabitance fall under the statute requiring the individual to register. *Page 12 
 {¶ 17} Sommerfield also claims that R.C. 2950.04 is vague because it is impossible to ascertain what the language "more than five days" means. The phrase in question is seemingly ambiguous. However, the language "for more than five days," though seemingly ambiguous, is clarified when read in context of the entire statute. The statute requires the offender to register "within five days of the offender'scoming into a county in which the offender resides or temporarily is domiciled for more than five days * * *." R.C. 2950.04(A)(1). This cannot mean that a person must register after residing in one place for five total days in a lifetime. Such an interpretation of the statute would lead to an absurd result — if a person stayed at the same hotel when frequently traveling to an Ohio city on business that person would have to register after staying at the hotel for the fifth time. In other words, if the language conditioning registration on residing in the county for more than five days means "five days in a lifetime," the offender could never be sure if he would have to register because he would never know whether or not he may happen to come back to that place four more times in his lifetime. This is clearly not the intended purpose of the statute.
 {¶ 18} More importantly, interpreting the statute to mean "more than five days in a lifetime" is not viable. The statute requires the affirmative act of registering "within five days of coming into thecounty." R.C. 2950.04(A)(1) (emphasis added). This means that the offender must register within five days of *Page 13 the first day spent residing or being temporarily domiciled in the county. Thus, the requirement to register is predicated on the offender residing in the county for more than five days, but the act of registering is mandated to occur within five days of the first day. Put another way, the offender must register within five days of coming into the county, but only if he will reside in the county for five consecutive days. The only possible way these two conditions can be reconciled is if the statute means "five consecutive days."
 {¶ 19} Based on the foregoing, we find that there is a reasonable and practical construction of the language in R.C. 2950.04(A)(1), and therefore the statute gives adequate notice of the duty to register and when registration must occur. There is only one plausible interpretation of the language requiring the offender to register within five days — that they be five consecutive days. Moreover, the statute does not authorize or encourage arbitrary enforcement, because enforcement is mandated as soon as the offender fails to register. Accordingly, being mindful of the presumption of constitutionality and our prior opinion inSommerfield I, R.C. 2950.04 is not unconstitutionally vague. The third assignment of error is overruled.
 {¶ 20} Finally, Sommerfield claims that by imposing more than the minimum sentence, without a jury finding is unconstitutional. Sommerfield argues that the use of the sentencing remedy set forth inState v. Foster, *Page 14 109 Ohio St.3d 1, 2006-Ohio-856, 845 N.E.2d 470, is unconstitutional because it increases the presumptive sentence, thus violating the ex post facto clause of the United States Constitution. This court has previously held that the Ohio Supreme Court's decision in Foster does not violate the due process clause or the ex post facto clause. State v. McGhee, 3rd Dist. No. 17-06-05, 2006-Ohio-5162. The Ohio Supreme Court has denied review of that decision. State v. McGhee,112 Ohio St.3d 1491, 2007-Ohio-724, 862 N.E.2d 118. For the reasons stated inMcGhee, Sommerfield's fourth assignment of error is overruled.
 {¶ 21} The judgment of the Court of Common Pleas of Union County is affirmed.
Judgment Affirmed.
 SHAW and PRESTON, JJ., concur. *Page 1