[Cite as *State v. Goss*, 2012-Ohio-3869.]

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY

STATE OF OHIO

        Plaintiff-Appellee

v.

STEVEN J. GOSS

        Defendant-Appellant

:
:
:
:
:
:
:
:
:
:
:
:

Appellate Case No. 24830

Trial Court Case No. 2011-CR-798

(Criminal Appeal from
 Common Pleas Court)

. . . . . . . . . . .

O P I N I O N

Rendered on the 24th day of August, 2012.

. . . . . . . . . . .

MATHIAS H. HECK, JR., by MICHELE PHIPPS, Atty. Reg. #0069829, Montgomery County Prosecutor's Office, Appellate Division, Montgomery County Courts Building, P.O. Box 972, 301 West Third Street, Dayton, Ohio 45422
        Attorney for Plaintiff-Appellee

J. ALLEN WILMES, Atty. Reg. #0012093, 4428 North Dixie Drive, Dayton, Ohio 45414
        Attorney for Defendant-Appellant

. . . . . . . . . . . .

WILLAMOWSKI, J. (Sitting by Assignment)

{¶ 1}     Defendant-appellant Steven J. Goss ("Goss") brings this appeal from the judgment of the Court of Common Pleas of Montgomery County finding him guilty of rape.

For the reasons set forth below, the judgment is affirmed.

{¶ 2}    On March 6, 2011, the victim, Holly, had too much to drink and accepted a ride home from a stranger, Goss.  She fell asleep in the back of the car and woke later going the wrong direction from her home.  Goss told her he was taking her to his house and she refused.  Holly suggested that he take her to a motel at the next exit off the interstate so that she could sleep off her intoxicated state.  When they arrived at the room, Goss attempted to have sexual intercourse with Holly and she refused.  Goss then punched her in the face and proceeded to engage in sexual intercourse with Holly.  As soon as Holly could escape, she ran away from the room, leaving her purse, underwear, bra, and shoes behind.  She ran through the dark, snowy parking lot, towards houses down the street which were lit and started banging on the doors of strangers calling for help.  At one home, the occupants saw Holly's bloodied face and let her in the house.  This all occurred around four in the morning.  They called the police and Holly was taken to the hospital.  The police went to the motel, but found the room to be vacant.  They later located Goss at his home.  He had Holly's purse and the motel key card.  He claimed that he and Holly had gone to the motel and engaged in consensual sexual intercourse.

{¶ 3}    On March 15, 2011, the Montgomery County Grand Jury indicted Goss on one count of rape.  Goss entered a plea of not guilty on March 17, 2011.  On March 31, 2011, a motion to suppress Goss's statements was filed.  A hearing was held on May 12, 2011.  The trial court overruled the motion on June 8, 2011.  A jury trial was held on August 22 and 23, 2011.  At the conclusion of the trial, the jury returned a verdict of guilty.  On September 8, 2011, the trial court sentenced Goss to seven years in prison.  Goss appeals from these

judgments and raises the following assignments of error.

### First Assignment of Error

THE TRIAL COURT COMMITTED PREJUDICIAL ERROR BY ALLOWING THE SANE NURSE TO TESTIFY WITHOUT PROPER FOUNDATION, ABOUT VAGINAL SECRETIONS.

### Second Assignment of Error

[GOSS] WAS DENIED HIS RIGHT TO EFFECTIVE ASSISTANCE OF TRIAL COUNSEL WHO FAILED TO OBJECT TO IMPROPER PROSECUTORIAL COMMENTS IN BOTH OPENING STATEMENT AND CLOSING ARGUMENT AND TO THE INTRODUCTION OF TESTIMONY IRRELEVANT AND PREJUDICIAL.

{¶ 4}     Goss argues in his first assignment of error that the trial court erred in allowing a sexual assault nurse examiner ("SANE") nurse to testify concerning vaginal secretions. Goss is primarily arguing that the trial court erred by permitting the SANE nurse to testify as an expert witness without the proper qualifications.

A witness may testify as an expert if all of the following apply:

(A)   The witness' testimony either relates to matters beyond the knowledge or experience possessed by lay persons or dispels a misconception common among lay persons;

(B)   The witness is qualified as an expert by specialized knowledge, skill, experience, training, or education regarding the subject matter of the

testimony;

(C)   The witness' testimony is based on reliable, scientific, technical, or other specialized information.   To the extent that the testimony reports the result of a procedure, test, or experiment, the testimony is reliable only if all of the following apply:

(1)   The theory upon which the procedure, test, or experiment is based is objectively verifiable or is validly derived from widely accepted knowledge, facts, or principles;

(2)    The design of the procedure, test or experiment reliably implements the theory;

(3)   The particular procedure, test, or experiment was conducted in a way that will yield an accurate result.

Evid.R. 702.   The determination as to whether a witness may testify as an expert is within the sound discretion of the trial court and will not be reversed on appeal absent a showing of an abuse of that discretion.   *State v. Garrett*, 1st Dist. Hamilton No. C-090592, 2010-Ohio-5431, ¶35.

{¶ 5}    In this case, the nurse testified that she had started as a licensed practical nurse in 1980 and received her registered nurse degree in 1995.   Tr. 283.   She was employed as a Sexual Assault Nurse Examiner in Butler County in 1998 and began conducting exams in 1999.   Tr. 284.   Thus, she had more than a decade of experience in conducting sexual assault exams by the time of the exam in question.   The trial court considered the questions being asked, her training, and her expertise.   Tr. 296-97.   The trial court then determined that the

questions being asked were basic anatomy questions and were within the realm of the nurse's expertise and training. Based upon a review of the evidence, there is nothing in the record to indicate otherwise. In addition, Goss had the opportunity to cross-examine the nurse on the basis of her knowledge and question her conclusions. Absent a showing that an abuse of discretion occurred, this court must affirm the judgment of the trial court. The first assignment of error is overruled.

{¶ 6} The second assignment of error raised by Goss alleges that he was denied effective assistance of counsel. Goss claims that his trial counsel should have objected to improper prosecutorial comments in opening and closing statements and objected to the introduction of irrelevant and prejudicial testimony.

A defendant asserting a claim of ineffective assistance of counsel must establish: (1) the counsel's performance was deficient or unreasonable under the circumstances; and (2) the deficient performance prejudiced the defendant. *State v. Kole*, 92 Ohio St.3d 303, 306, 2001-Ohio-191, 750 N.E.2d 148, citing *Strickland v. Washington* (1984), 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674. Moreover, "[j]udicial scrutiny of counsel's performance is to be highly deferential, and reviewing courts must refrain from second-guessing the strategic decisions of trial counsel." *State v. Sallie*, 81 Ohio St.3d 673, 674, 1998-Ohio 343, 693 N.E.2d 267. "To justify a finding of ineffective assistance of counsel, the appellant must overcome a strong presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Id.* In establishing whether counsel's performance was deficient, the

defendant must show that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Kole*, 92 Ohio St.3d at 306, 2001-Ohio-191, 750 N.E.2d 148, quoting *Strickland*, 466 U.S. at 687. An appellate court must review the totality of the circumstances and not isolated instances of an allegedly deficient performance. *State v. Stacy*, 3d Dist. No. 13-08-44, 2009-Ohio-3816, ¶ 20.

*State v. Wilson*, 3d Dist. Allen No. 1-09-53, 2010-Ohio-2947, ¶12.

{¶ 7} In order for Goss's attorney to be ineffective, there must be prosecutorial misconduct.

The applicable standard of review for prosecutorial misconduct "is whether the comments and/or questions by the prosecution were improper, and, if so, whether they prejudiced appellant's substantial rights." * * * However, "the touchstone of analysis is the fairness of the trial, not the culpability of the prosecutor." * * * Thus, "prosecutorial misconduct will not provide a basis for reversal unless the misconduct can be said to have deprived the appellant of a fair trial based on the entire record."

*State v. Brady*, 3rd Dist. No. 9-03-27, 2003-Ohio-6005, ¶6. Additionally, if no objections are made to the alleged misconduct, it must be reviewed under a plain error standard. *Id.*

*State v. Sommerfield*, 3d Dist. Union No. 14-07-09, 2007-Ohio-6427, ¶6.

{¶ 8} The first alleged instance of misconduct was a statement by the prosecutor during opening statement that Goss had been indicted by the Grand Jury. The statement in context was as follows.

Based upon his actions that night, a grand jury indicted the Defendant on one count of rape. The State is going to prove to you each and every element of the charge of rape. The State will prove to you that on March 6th, 2011, in Montgomery County, Ohio, It's 550 East National Road in Vandalia, it's the address of the Super 8 motel, this Defendant, Steven Goss did engage in sexual conduct with another person, [Holly], by purposely compelling the other person to submit by force or threat of force. When you have heard all of the evidence in this case, ladies and gentlemen, you will realize that the evidence has shown that is exactly what happened. And the State will ask you to hold the Defendant responsible for his actions and find him guilty of rape. Thank you.

Tr. 171-72.

{¶ 9} Although the prosecutor mentioned that Goss had been indicted, he did not indicate in any manner that it was a finding of guilt. The prosecutor correctly stated the procedures by which the case came before the jury. The jurors were already aware that Goss had been indicted because the trial court had told them such during voir dire:

This being a criminal case, you should be aware from the outset of this proceeding that it began with the filing of what is called an indictment. An indictment is not proof of anything. It is simply the piece of paper that is used to inform a Defendant of the charges against him.

Tr. 63.

{¶ 10} The trial court also specifically addressed the impact of the indictment, as well as opening statements during the jury instructions:

A criminal case begins with the filing of an Indictment. The Indictment informs the Defendant that he has been charged with an offense. The fact that it was filed may not be considered for any other purpose. The

plea of not guilty is a denial of the charge and puts in issue all the essential elements of the offense.

* * *

The evidence does not include the Indictment, opening statements or closing arguments of counsel. The opening statements and closing arguments of counsel are designed to assist you. They are not evidence.

Tr. 391, 393.

{¶ 11} The prosecutor did not imply guilt and the jury was well aware that the indictment was not a finding of guilt. See *State v. LaMar*, 95 Ohio St.3d 181, 2002-Ohio-2128, 767 N.E.2d 166 (holding that it was not improper for prosecutor to read indictment to jury during opening statement and emphasizing that the jurors can take a copy of the indictment into the jury room with them) and *State v. Leggett*, 6th Dist. Lucas No. L-03-1170, 2004-Ohio-4843 (holding that paraphrasing of indictment during opening statement was not prosecutorial misconduct when the trial court instructed jury that opening statements are not evidence); Thus, there was no prosecutorial misconduct in the statement.

{¶ 12} The second alleged act of misconduct was that the prosecutor attempted to garner sympathy for the victim during closing argument. The comments in question taken in context are as follows:

Something that the Defense attorney hasn't been able to explain throughout the course of this trial is what motivation does [Holly] have to make this up? Why in the world would she make this up? Think about what happened as a result of her telling people that this happened. She took off

running. She left her purse. Left all of her possessions there. She ran begging for help in the middle of the night where she doesn't know anybody. She's called, she has to talk to the police. Tell them what happened. She then had to go to the hospital where she had to undergo one of the most embarrassing and humiliating exams that a person could ever go through. She had to stand there and disrobe in front of a complete stranger while that stranger examined every inch of her body. Stuck metal objects into her vagina. Combed her pubic hair looking for evidence. Why would anyone voluntarily put themselves through that situation? What did she have to gain? Absolutely nothing. There was nothing to gain.

But it didn't end there. It wasn't just the SANE nurse that she had to talk to. She then had to meet with the detective and talk to him and relive it again. And then she had to come in here. And she had to take that witness stand and in front of 12, 13 complete strangers, she had to relive the most horrible night of her life. You saw her testify. Did it seem genuine to you? Did it seem like this is just some crazy girl making this up? Or does it seem like that night has affected her and will affect her for the rest of her life? She had no motivation to come in here and make this up. It doesn't make any sense whatsoever.

Tr. 388-89.

{¶ 13} These statements were made during the State's rebuttal to Goss' closing argument. During Goss' closing argument, he argued that the sexual intercourse was

consensual and that Holly had changed her mind afterwards and regretted the act. Goss' attorney had challenged the credibility of Holly's testimony. Given this argument, the prosecutor did not commit misconduct by showing why Holly's testimony was credible. Having found no acts of prosecutorial misconduct, this court cannot find that Goss' trial counsel was ineffective for failing to object to prosecutorial misconduct.

{¶ 14} Finally, Goss argues that his trial counsel was ineffective for allowing the introduction of irrelevant and prejudicial evidence. Specifically, Goss argues that his counsel should have objected to the testimony concerning Goss having the social security payee card for a third party. There is no question that the issue of Goss having possession of a third party's social security payee card has no bearing on the question of whether Goss forcibly engaged in sexual intercourse with Holly. Thus, Goss is correct that the evidence is irrelevant and his counsel should have objected.

{¶ 15} However, the fact that it is irrelevant does not automatically make it prejudicial. To be prejudicial, there must be a reasonable probability that the error of counsel affected the outcome of the case. *State v. Sanders*, 94 Ohio St.3d 150, 2002-Ohio-350, 761 N.E.2d 18. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *State v. Bradley*, 42 Ohio St.3d 136, 538 N.E.2d 373 (1989). A review of the evidence in this case shows that the sole question before the jury was whether the sexual intercourse was consensual. Holly testified that Goss had struck her in the face, and she had a cut lip to support her claim. Holly also testified as to what happened and how she ran away from the motel room. This testimony was supported by testimony from another witness who testified to the fact that Holly came to her home early in the morning without shoes or a coat,

dried blood on her face, and crying hysterically. All the statements made by Holly were supported by the physical evidence. Additionally, Goss' witness testified to a legal and reasonable explanation as to why Goss could have possession of a third person's social security payee card. Given all of the evidence and viewing it as a whole, the outcome of the trial would have been the same even without the evidence concerning the payee card. Therefore, the admission of the evidence and trial counsel's failure to object to it were not prejudicial. The second assignment of error is overruled.

{¶ 16}    Having found no error prejudicial to defendant, the judgment of the Court of Common Pleas of Montgomery County is affirmed.

. . . . . . . . . . . . .

FAIN and FROELICH, JJ., concur.

(Hon. John R. Willamowski, Third District Court of Appeals, sitting by assignment of the Chief Justice of the Supreme Court of Ohio).

Copies mailed to:

Mathias H. Heck
Michele D. Phipps
J. Allen Wilmes
Hon. Mary L. Wiseman