[Cite as *State v. Young*, 2016-Ohio-1379.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 103080**

## STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

## LEONARD YOUNG

DEFENDANT-APPELLANT

## JUDGMENT:
REVERSED AND REMANDED

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-14-590202-A

**BEFORE:** Kilbane, P.J., E.T. Gallagher, J., and Laster Mays, J.

**RELEASED AND JOURNALIZED:** March 31, 2016

**ATTORNEY FOR APPELLANT**

David J. Goodwin
David J. Goodwin, Attorney-At-Law
P.O. Box 94033
Cleveland, Ohio 44101


**ATTORNEYS FOR APPELLEE**

Timothy J. McGinty
Cuyahoga County Prosecutor
Jonathan Block
Assistant County Prosecutor
The Justice Center - 9th Floor
1200 Ontario Street
Cleveland, Ohio 44113

MARY EILEEN KILBANE, P.J.:

**{¶1}** Defendant-appellant, Leonard Young ("Young"), appeals from his conviction for failure to provide notice of change of address in violation of R.C. 2950.05(E)(1). For the reasons set forth below, we conclude that because Young did include the address that is the subject of the conviction as a "secondary address" on Cuyahoga County's Sex Offender Registration form ("registration form"), there is insufficient evidence to support the conviction. Therefore, we reverse and remand the matter with instructions to vacate the conviction.

**{¶2}** In 2006, Young was convicted of rape and was classified as a sexually oriented offender.[1] Following his release from a seven-year prison term, Young was notified by the Cuyahoga County Sheriff's Department that he is required to register as a sex offender. As a registered sex offender, Young was required to register his address annually, for a period of ten years, with the sheriff's department of his county of residence. It is undisputed that Young completed the registration form on June 12, 2014, listing the Lutheran Metropolitan Ministries men's shelter, located at 2100 Lakeside Avenue ("homeless shelter"), as his "current address," and an apartment located at 1369 West 112th Street as his "secondary address."

**{¶3}** The registration form states:

6.) Current Address 2100 Lakeside Cleveland 44114

---

[1] *See* Cuyahoga C.P. No. CR-05-466921.

* * *

12.) Secondary Address <u>1369 W. 112 #307 Cleveland, Oh 44102</u>

**{¶4}** The state alleges that Young stopped residing at the homeless shelter and moved into the apartment on June 22, 2014. Young waived his right to a jury trial, and the matter proceeded to a bench trial on April 9, 2015.

**{¶5}** At trial, Mike Moguel ("Moguel"), director of operations for the homeless shelter, testified that the homeless shelter has an occupancy rate of 365, but can provide shelter for up to 420 individuals because it has offsite housing with an additional 50 beds. The homeless shelter keeps track of the individuals who spend the night there by using a computerized system that is based upon biometric scans of residents' thumb prints. Individual attendance is then tracked using a unique record number. The average length of stay is 32 days.

**{¶6}** Moguel authenticated the homeless shelter's computer printout of the bed records pertaining to Young's attendance from May 2014 through September 2014. According to Moguel, on May 16, 2014, Young was assigned to a bed in the sojourn dormitory. On May 26, 2014, he was on the waiting list for a bed in the sojourn dormitory, but left the shelter before a bed became available. On May 30, 2014, he stayed in the mat room. On June 1, 2014, he was on the waiting list, but left before a bed became available. The attendance records further indicated that Young stayed at the homeless shelter on June 2, 3, 13, and 14, 2014, and did not return again until September 17, 2014.

**{¶7}** Deputy Sheriff Detective Susan DeChant ("Detective DeChant") of the Cuyahoga County Sheriff's Department testified that in 2014, she was in charge of sex offender registration compliance, and worked in the registration office. According to Detective DeChant, at the initial registration, the reporting requirements are explained to the offender. The offenders are required to complete a form and provide their name, social security number, date of birth, address, and other identifying information. Insofar as it pertains to the offender's address, the reporting form contains blanks where the offender is to list his or her "current address" and "secondary address." Although Detective DeChant did not testify to the precise instructions given to Young on this particular matter, she explained the difference between an offender's "current address" and "secondary address" as follows:

> Whenever they have a secondary address, the registration office will explain to them this is just if you have the occasion to be someplace, but the majority of the time you have to be at your current residence.

**{¶8}** Detective DeChant admitted, however, that the sheriff's department does not verify whether an offender is at his "secondary address," because "the majority of the time [the offender has] to stay at their current residence." Detective DeChant acknowledged that the Ohio Attorney General's Office suggested that the registration form include a provision for "secondary addresses," but only Cuyahoga county asks for a "secondary address."

**{¶9}** Detective DeChant next testified that Young has been registering yearly since 2012. On his June 12, 2014 registration, which is the subject of the indictment,

Young indicated that his "current address" was 2100 Lakeside (the homeless shelter). On the part of the form marked "secondary address," Young wrote, "1369 W. 112, #307, Cleveland 44102." In undertaking a random verification of Young's address, she learned that he last stayed at the homeless shelter on June 20, 2014. She insisted that because Young had not advised the sheriff's department that he had moved from the homeless shelter listed as his "current residence" and into the "secondary address," he was no longer in compliance with his registration duties.

{¶10} Following the presentation of the state's case, the trial court denied Young's motion for acquittal. Young testified on his own behalf. He testified that he began living at the homeless shelter upon his release from prison. During his June 12, 2014 registration, he listed the homeless shelter as his "current address," and also noted "1369 West 112th Street, #307," in a section of the form directly below "current address," marked "secondary address." He stated that he planned to move into the apartment permanently, but at the time of his registration, the apartment had various habitation issues that kept him from staying there. He explained that he had first stayed there one night in May 2014, but the housing issues were not rectified. He then stayed there regularly in July and August 2014, but it reminded him too much of prison, so he returned to the homeless shelter in September 2014.

{¶11} On May 1, 2015, the trial court found Young guilty of failure to provide notice of change of address, as charged in the indictment. The court sentenced Young to nine months in prison and up to three years of postrelease control sanctions.

**{¶12}** Young now appeals, assigning the following errors for our review:

Assignment of Error One

It was error for the trial court to find [Young] guilty of a violation of R.C. 2950.05 (failure to provide notice of change of address) based upon questionable so-called "bed records" and other evidence insufficient to convict [Young] thereby depriving him of his rights to due process guaranteed by our Federal and State Constitutions.

Assignment of Error Two

The trial court erred in adjudicating a strict liability offense by failing to consider how law enforcement and those charged with enforcing statutory registration requirements upon persons classified as sexually oriented offenders do so by use of procedures and materials that lead to, or contribute to, criminal violations by such offenders.

**{¶13}** In his first assignment of error, Young argues that the trial court erred in admitting the homeless shelter "bed records" into evidence, and that there is insufficient evidence to support his conviction for failure to provided notice of a change of address.

Bed Records

**{¶14}** With regard to the admission of the homeless shelter "bed records," Young complains that no testimony was offered to explain the biometric scanning procedure, its reliability, and the attendance records derived from those scans. He also complains that the records contain inadmissible hearsay.

**{¶15}** We note, however, that Young failed to raise this issue at trial, so he has waived all but plain error. *See* Crim.R. 52(B). Under Crim.R. 52(B), "[n]otice of plain

error * * * is to be taken with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice." *State v. Long*, 53 Ohio St.2d 91, 372 N.E.2d 804 (1978), paragraph three of the syllabus. Crim.R. 52(B) places the following three limitations on a reviewing court's decision to correct an error despite the absence of a timely objection at trial: (1) there must be error; (2) the error must be an "obvious" defect in the trial proceedings; and (3) the error must have affected "substantial rights." *State v. Barnes*, 94 Ohio St.3d 21, 27, 2002-Ohio-68, 759 N.E.2d 1240.

{¶16} We further note that "[t]he admission or exclusion of relevant evidence rests within the sound discretion of the trial court." *State v. Sage*, 31 Ohio St.3d 173, 510 N.E.2d 343 (1987), paragraph two of the syllabus.

{¶17} Pursuant to Evid.R. 803(6), business records are an exception to the hearsay rule.

> To qualify for admission under Rule 803(6), a business record must manifest four essential elements: (i) the record must be one regularly recorded in a regularly conducted activity; (ii) it must have been entered by a person with knowledge of the act, event or condition; (iii) it must have been recorded at or near the time of the transaction; and (iv) a foundation must be laid by the "custodian" of the record or by some "other qualified witness."

*State v. Davis*, 116 Ohio St.3d 404, 2008-Ohio-2, 880 N.E.2d 31, ¶ 171, quoting Weissenberger, *Ohio Evidence Treatise* 600, Section 803.73 (2007).

{¶18} In this matter, the record demonstrates that all four of the requirements for admission of the records under Evid.R. 803(6) were met, so we find no abuse of discretion in the admission of this evidence. We further note that this evidence is

consistent with Young's own testimony regarding his whereabouts. Therefore, we find no plain error.

<u>Sufficiency of the Evidence</u>

**{¶19}** A challenge to the sufficiency of the evidence supporting a conviction requires a determination of whether the state has met its burden of production at trial. *State v. Thompkins*, 78 Ohio St.3d 380, 390, 1997-Ohio-52, 678 N.E.2d 541. When reviewing sufficiency of the evidence, an appellate court must determine "'whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.'" *State v. Leonard*, 104 Ohio St.3d 54, 2004-Ohio-6235, 818 N.E.2d 229, ¶ 77, quoting *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus. In a sufficiency inquiry, an appellate court does not assess whether the state's evidence is to be believed, but whether if believed, the evidence admitted at trial supported the conviction. *Thompkins*; *Jenks* at paragraph two of the syllabus.

**{¶20}** Offenders such as Young, who were convicted of sexually oriented offenses prior to January 2008, are required to register their addresses with the sheriff of the county in which they reside. R.C. 2950.05. They must also "provide written notice of any change of residence address," and also shall register "any" "new address." *Id*. Under this statute, an offender violates the registration law by: (1) failing to register one's address in the county where the offender resides within five days of coming into the county; (2) failing to register one's address in the county where the offender is

temporarily domiciled for more than five days; or (3) failing to register a new address where the defendant resides or is temporarily domiciled. *State v. Ballard*, 7th Dist. Columbiana No. 08CO13, 2009-Ohio-5472, ¶ 92; *State v. Sommerfield*, 3d Dist. Union No. 14-05-23, 2006-Ohio-1420, ¶ 9; *State v. Curtis*, 8th Dist. Cuyahoga No. 89412, 2008-Ohio-916.

{¶21} The Supreme Court of Ohio has held that there is no scienter requirement for the offense because the act of failing to register alone, without more, is sufficient to trigger criminal punishment under R.C. 2950.99. *State v. Cook,* 83 Ohio St.3d 404, 409, 418, 1998-Ohio-291, 700 N.E.2d 570. Strict liability offenses impose liability for simply doing a prohibited act. *State v. Johnson,* 128 Ohio St.3d 107, 2010-Ohio-6301, 942 N.E.2d 347, ¶ 17. Similarly, failure to provide notice of "change" of address for allegedly moving to a "new" address, in violation of R.C. 2950.05, is a strict liability offense. *State v. Stewart*, 8th Dist. Cuyahoga No. 94863, 2011-Ohio-612, ¶ 17, citing *State v. Beasley*, 8th Dist. Cuyahoga No. 77761, 2001 Ohio App. LEXIS 4353 (Sept. 27, 2001). *See also State v. Combs*, 12th Dist. Brown No. CA2013-08-008, 2014-Ohio-2117. "An address changes when one no longer lives at that address." *Beasley* at ¶ 6.

{¶22} In enacting R.C. Chapter 2950, however, the legislature chose not to provide a specific definition of the term "residence." *Combs* at ¶ 9. The term is therefore construed with its ordinary meaning. *Id.*; *Sommerfield* at ¶ 18. The *Combs* court explained:

Black's Law Dictionary provides a helpful distinction between the terms residence and domicile: "Residence usu[ally] just means bodily presence as an inhabitant in a given place; domicile usu[ally] requires bodily presence plus an intention to make the place one's home." *Black's Law Dictionary* (9th Ed.2009). * * * An individual can only have one domicile, but he can have more than one residence. * * *

{¶23} "Secondary address" is also undefined in the statutory scheme.

{¶24} In this matter, the record indicates that Young, who is required to register yearly, completed the form by providing both the "current address" of the homeless shelter and the "secondary address" of his West 112th Street apartment. The prosecuting attorney informed the court at oral argument that the section for a "secondary address" was included at the suggestion of the Ohio Attorney General, and that Cuyahoga county is the only county in the state to include it. According to Detective DeChant, the secondary address is provided if the offender "may have an occasion to stay at another address," whereas the primary address is "where the offender spends the majority of his time." Nonetheless, the term is undefined on the form and within the statutory reporting law scheme. In addition, it is undisputed that in undertaking random address verifications, the deputies do not check the secondary addresses.

{¶25} In light of all of the foregoing, Young's conviction for failure to report a change of address, which is based on his move into the West 112th Street apartment Young identified as his "secondary address," is not supported by sufficient evidence. The state insists that Young violated his reporting duties when he moved from his "current address," identified as the homeless shelter, and into the apartment, identified as his "secondary address." Nonetheless, the term "secondary residence" is not included

within the statutory reporting scheme. We recognize that "an offender's acquisition of a second residence may be a change of address that triggers the notice requirements under R.C. 2950.05," and "[r]egistration of a single residence address gives rise to the impression that an offender has a single residence." *Combs*, 12th Dist. Brown No. CA2013-08-008, 2014-Ohio-2117, ¶ 10. Here, however, Young provided candid, forthright, and accurate information and met his reporting requirements herein by listing all addresses where he resided. The state had actual notice of Young's address during the entire reporting period. There was no "change" of address, such to trigger the imposition of strict liability under R.C. 2950.05(E). Young did not move to a "new address," or move out of a reported address, and did not commit any act that would trigger a duty to apprise the sheriff of a change in information required to be reported.

**{¶26}** The first assignment of error is well taken.

Cuyahoga County Reporting Form — Secondary Addresses

**{¶27}** In his second assignment of error, Young argues that the term "secondary address" was not explained to him at the time of his registration and is not defined in the statutory reporting scheme. He therefore asserts that strict liability may not be imposed where, as here, an offender is at the identified "secondary address."

**{¶28}** The offense of failing to provide notice of a change of address is a strict liability offense. *State v. Blanton*, 184 Ohio App.3d 611, 617, 2009-Ohio-5334, 921 N.E.2d 1103 (10th Dist.). However, it is axiomatic that revised code provisions "defining offenses and penalties shall be strictly construed against the state, and liberally

construed in favor of the accused." R.C. 2901.04(A). Further, in enacting R.C. Chapter 2950, the legislature did not provide a specific definition of the term "residence," so this term is given its ordinary meaning. *Combs* at ¶ 9. The term "secondary residence" is not included within the reporting scheme.

{¶29} The prosecuting attorney informed this court at oral argument that the section for a "secondary address" was included at the suggestion of the Ohio Attorney General, and that Cuyahoga county is the only county to include it. The term "secondary address" is not defined on the registration form, however. Detective DeChant testified that a secondary address is provided if the offender "may have an occasion to stay at another address," whereas the primary address is where the offender spends "the majority of his time," but the deputies are not required to go to the offender's secondary address to verify that there has been accurate registration. Had they done so in this instance, they would have learned that Young had provided them with accurate information. By application of the foregoing, we conclude that where, as here, the offender is accused of moving into the "secondary address" that has actually been reported on the registration form, the offender may not be convicted of the strict liability offense of failure to provide notice of a change of address.

{¶30} The second assignment of error is well taken

{¶31} Judgment is reversed, and the matter is remanded with instructions to vacate the conviction.

It is ordered that appellant recover of appellee costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____

MARY EILEEN KILBANE, PRESIDING JUDGE

ANITA LASTER MAYS, J., CONCURS;
EILEEN T. GALLAGHER, J., DISSENTS (SEE SEPARATE DISSENTING OPINION).

EILEEN T. GALLAGHER, J., DISSENTING:

**{¶32}** I respectfully dissent from the majority's determination that Young's failure to provide notice of change of address conviction is not supported by sufficient evidence.

**{¶33}** As acknowledged by the majority, Young argues that his address did not "change," as contemplated under R.C. 2950.05, simply because he began living at his secondary address. Young contends that his secondary address was registered with the Cuyahoga County Sheriff's Office, and therefore, his obligations to notify the sheriff's office of a change of address was not triggered. I disagree with Young's interpretation of the statute.

**{¶34}** In furtherance of the public policy reasons for the notification requirements of R.C. 2950.05, this court has held that "an address changes when one no longer lives at that address." *Beasley*, 8th Dist. Cuyahoga No. 77761, 2001 Ohio App. LEXIS 4353, * 6 (Sept. 27, 2001). This conclusion is consistent with R.C. 2950.05(I), which states that a "change in address includes any circumstance in which the old address for the person in question no longer is accurate, regardless of whether the person in question has a new address." Thus, the term "change of address" is broadly defined and a defendant's notification requirements are triggered the moment he or she no longer lives at an old address, thereby rendering the address inaccurate.

**{¶35}** In this case, the shelter's bed records show that Young did not reside at the shelter for approximately three months following his registration in June 2014. Thus, the evidence presented at trial established that (1) Young no longer lived at the shelter at the time Detective DeChant attempted to verify his address, and (2) the designation of the shelter as Young's current address was no longer accurate. Under these circumstances, I would find that Young's address "changed," thereby triggering his duty to notify the sheriff's office of this change of address.

**{¶36}** In reversing his conviction, the majority relies extensively on the sheriff office's "Registrant Information Form" containing the section marked "secondary address." The majority states that it is this form that is the subject of the indictment in this case. In my view, however, the relevant document in this matter is the "Notice of Registration Duties of Sexual Oriented Offender or Child-Victim Offender Form" (the

"NRD" form") that solely lists Young's "primary home address" as 2100 Lakeside, Cleveland, Ohio 44114. Significantly, the NRD form lists the "duties and responsibilities" of Young's registration and contains Young's signature, "acknowledg[ing] that all of the [registration] requirements have been explained to [him]" and attesting that he "understand[s] that [he] must abide by all of the provisions of the Ohio Revised Code Chapter §2950, whether or not they have been explained to [him]." In contrast to the majority's holding, I believe the NRD form is the document that triggered Young's criminal indictment in this case.

{¶37} In my view, the sheriff's office's "Registrant Information Form," relied upon by the majority, is an informal document that is only intended to be used internally by the Cuyahoga County Sheriff's Office as a tool for monitoring its registrants. In fact, the document contains language stating that it is for "office use only." As explained by Detective DeChant, the inclusion of the secondary address line on the "Registrant Information Form" was created in order to afford the registrants of Cuyahoga County with a level of flexibility by permitting them to stay over night at a friend or family's home for a temporary period of time without the sheriff's office seeking a criminal indictment for failing to notify.

{¶38} Unfortunately, the level of discretion employed by the sheriff's office and the flexibility afforded to registrants in this county will likely be eliminated due to the inevitable exclusion of the secondary address line from the sheriff's office's internal form.

**{¶39}** Despite the future consequences that will result from the holding in this case, the sheriff's office's internal form was not intended to permit a registered sex offender to come and go from Residence A to Residence B as they wish. Similarly, I find no language in R.C. 2950.05 to conclude, as the majority's interpretation of *Combs*, 12th Dist. Brown No. CA2013-08-008, 2014-Ohio-211, suggests, that a sexually oriented offender can have more than one address. In my view, such a conclusion would be contrary to the public policy reasons supporting the creation of the notification requirements by the Ohio legislature.

**{¶40}** I recognize that Young believed that he was permitted to live at his new apartment without notifying the sheriff's office based on the inclusion of the "secondary address" section in the Registrant Information Form used by the Cuyahoga County Sheriff's Office. However, Young's subjective belief does not, and cannot, absolve him of his guilt. R.C. 2950.05 is a strict liability offense that places the burden on the defendant to comply with its notice requirements. *Beasley,* 8th Dist. Cuyahoga No. 77761, 2001 Ohio App. LEXIS 4353, at * 9.

**{¶41}** Based on the foregoing, I would find there was sufficient evidence by which the trial court could have found the elements of the crime proven beyond a reasonable doubt. Accordingly, I would affirm Young's conviction.