[Cite as *State v. Beech*, 2019-Ohio-120.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
|---|---|---|
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

STATE OF OHIO

    Appellee

    v.

GEORGE D. BEECH

    Appellant

C.A. No.    29036

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF SUMMIT, OHIO
CASE No.    CR-2017-06-2085

DECISION AND JOURNAL ENTRY

Dated: January 16, 2019

HENSAL, Judge.

{¶1}    George Beech appeals his convictions and sentence in the Summit County Court of Common Pleas. For the following reasons, this Court affirms.

I.

{¶2}    In 1999, a court found that Mr. Beech was a habitual sex offender and ordered him to register his address annually for 20 years. In 2017, Mr. Beech's registered address was a house he rented in Randolph. According to T.W., however, Mr. Beech moved in with her in January 2017. Although Mr. Beech continued to rent the house in Randolph and kept most of his belongings there, he brought all of his clothes to T.W.'s house and began spending every night with her. T.W. testified that, after a few months, she could not afford the house any longer, so she moved into a camper that she had at a campground in Clinton. Mr. Beech continued to live with her after the move and began working at the campground.

{¶3}     Near the end of June 2017, law enforcement received a report that Mr. Beech had been abusive toward T.W. and her children.  Following an investigation, the Grand Jury indicted Mr. Beech on one count of failure to register under Revised Code Section 2950.04 and one count of failure to provide notice of change of address under Section 2950.05.  After Mr. Beech waived his right to a jury trial, the court conducted a trial to the bench.  It found him guilty of the offenses and sentenced him to 30 months imprisonment.  Mr. Beech has appealed, assigning three errors.  Because he has argued some of his assignments of error together, we will also address them together.

## II.

### ASSIGNMENT OF ERROR I

THE TRIAL COURT COMMITTED REVERSIBLE ERROR WHEN IT FOUND MR. BEECH GUILTY BECAUSE THE EVIDENCE WAS INSUFFICIENT TO SUPPORT SUCH FINDINGS.

### ASSIGNMENT OF ERROR II

MR. BEECH'S CONVICTIONS ARE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶4}     Mr. Beech argues that his convictions are not supported by sufficient evidence and are against the manifest weight of the evidence.  Whether a conviction is supported by sufficient evidence is a question of law, which we review de novo.  *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997).  In making this determination, we must view the evidence in the light most favorable to the prosecution:

> An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt.  The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.

*State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus.

{¶5} If a defendant asserts that his convictions are against the manifest weight of the evidence,

> an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction[s] must be reversed and a new trial ordered.

*State v. Otten*, 33 Ohio App.3d 339, 340 (9th Dist.1986). Weight of the evidence pertains to the greater amount of credible evidence produced in a trial to support one side over the other side. *Thompkins* at 387. An appellate court should only exercise its power to reverse a judgment as against the manifest weight of the evidence in exceptional cases. *State v. Carson*, 9th Dist. Summit No. 26900, 2013-Ohio-5785, ¶ 32, citing *Otten* at 340.

{¶6} The trial court found Mr. Beech guilty of failure to register under Section 2950.04 and failure to provide notice of change of address under Section 2950.05. Section 2950.04 provides, in relevant part, that a sexually oriented offender shall register with the county sheriff "within three days of the offender's coming into a county in which the offender resides * * *." R.C. 2950.04(A)(2)(a). It also provides that the offender must register with the sheriff of the county "in which the offender is employed if the offender * * * has been employed in that county for more than three days or for an aggregate period of fourteen or more days in that calendar year." R.C. 2950.04(A)(2)(c). Section 2950.05 provides that, if an offender is required to register under Section 2950.04, the offender "shall provide notice of any change of residence * * * or place of employment address * * *." R.C. 2950.05(A). It also provides that the offender shall provide the notice "at least twenty days prior to changing the residence * * * and not later than three days after changing the place of employment address * * *. R.C. 2950.05(B).

{¶7}     Mr. Beech argues that the evidence presented at trial did not demonstrate that his residence was in Summit County at the time specified in the indictment. The indictment concerned Mr. Beech's alleged move to T.W.'s camper around May 1, 2017. At trial, Mr. Beech stipulated that he was a registered sex offender and that he did not register an address in Summit County. T.W. testified that, beginning in January 2017, Mr. Beech began spending every night with her at her house and brought his clothes to the house. Because she could not afford her house, she moved to her camper when the campground's season started, which was May 1. When she moved to the camper, Mr. Beech went with her. Although they occasionally spent the night at Mr. Beech's house, T.W. testified that it was only three or four nights out of the entire time they were a couple. T.W. also testified that, after they moved to the camper, Mr. Beech began working at the campground. Initially, the owner simply allowed Mr. Beech to scrap some of the old campers at the campground, but later hired him to do maintenance work.

{¶8}     Two of T.W.'s daughters also testified that Mr. Beech stayed with them at the camper while he was dating T.W. One testified that he was there all but three or four nights and the other testified that Mr. Beech also worked for the campground. The State also introduced a copy of the protection order that Mr. Beech consented to, which described him as T.W.'s live-in boyfriend.

{¶9}     The term "residence" is not specifically defined in Chapter 2950, so we will apply its ordinary meaning. *State v. Young*, 8th Dist. Cuyahoga No. 103080, 2016-Ohio-1379, ¶ 22; *State v. Combs*, 12th Dist. Brown No. CA2013-08-008, 2014-Ohio-2117, ¶ 9. Black's Law Dictionary defines "residence" as "1. [t]he act or fact of living in a given place for some time * * * 2. [t]he place where one actually lives, as distinguished from a domicile[.]" *Black's Law Dictionary* (10th ed.2014). It also provides that "residence" usually "just means bodily presence

as an inhabitant in a given place" whereas domicile usually "requires bodily presence plus an intention to make the place one's home. A person thus may have more than one residence at a time but only one domicile." *Id.* Under this definition, we conclude that there was sufficient evidence that Mr. Beech resided at T.W.'s camper.

{¶10} Mr. Beech also argues that there was insufficient evidence that he was employed within Summit County. Although he admits that he helped around the campground, he contends he never received a paycheck, which made him nothing more than a volunteer.

{¶11} Although Mr. Beech may not have received a paycheck from the campground, he testified that its owner gave him money for the work he did. While he characterized the payments as merely gas money, Mr. Beech's admission that he was paid for his work was sufficient evidence to support a finding that he was employed by the campground. Accordingly, upon review of the record, we conclude that Mr. Beech's conviction was supported by sufficient evidence. His first assignment of error is overruled.

{¶12} Regarding the weight of the evidence, Mr. Beech argues that his domicile and residence has always been his house in Portage County, because that is where he receives his mail, where he pays utility bills, where his household furnishings are, and where his dog lives. He notes that his father testified that he would pick up Mr. Beech at his house or take him back to the house several times a week. One of Mr. Beech's friends also testified that he would go to Mr. Beech's house several times a week and that Mr. Beech would almost always be there. Mr. Beech notes that the sheriff's deputy who testified never went out to his Portage County house and never saw any physical items suggesting that he had a residence in Summit County.

{¶13} Mr. Beech argues that the trial court incorrectly reasoned that the domestic relations court must have found that he lived with T.W. because it issued temporary protection

order against him. He notes that, under Section 3113.31, someone who is in a dating relationship with another can seek a protection order, even if they do not live with the person they are dating. Regarding whether he worked in Summit County, Mr. Beech notes that the State did not present any paychecks, tax returns, or other financial documents that indicated that he was employed in the county.

{¶14} Mr. Beech is correct that he did not have to live with T.W. in order for her to obtain a domestic violence civil protection order against him. The consent agreement that he signed, however, listed him as T.W.'s live in boyfriend. The consent agreement form also contained a list of 18 provisions with the advisement that those that were checked applied to the respondent. T.W. and Mr. Beech checked seven of the provisions, including one that instructed Mr. Beech to immediately vacate T.W.'s residence. Another granted exclusive possession of the residence to T.W.

{¶15} Regarding the testimony of the witnesses called by the State and Mr. Beech, we note that the trial judge was in the best position to evaluate their credibility. *State v. Oswald*, 9th Dist. Summit No. 28633, 2018-Ohio-245, ¶ 25. Upon review of the record, we cannot say that the court clearly lost its way when it chose to believe the testimony of T.W. and her daughters over the testimony of Mr. Beech, his friends, and his father. Mr. Beech's second assignment of error is overruled.

ASSIGNMENT OF ERROR III

{¶16} THE TRIAL COURT COMMITTED REVERSIBLE AND PLAIN ERROR WHEN IT FAILED TO MERGE DEFENDANT'S CONVICTIONS FOR SENTENCING PURPOSES, AS THEY WERE ALLIED OFFENSES OF SIMILAR IMPORT.

{¶17} Mr. Beech also argues that his sentence should be vacated because the trial court sentenced him on allied offenses. He concedes that, because he did not raise the issue of allied

offenses at the sentencing hearing, he is limited to arguing that the trial court committed plain error. *State v. Rogers*, 143 Ohio St.3d 385, 2015-Ohio-2459, ¶ 3. Under a plain error review, any mistake by the trial court regarding allied offenses "is not reversible error unless it affected the outcome of the proceeding and reversal is necessary to correct a manifest miscarriage of justice." *Id*. at ¶ 3. Mr. Beech "has the burden to demonstrate a reasonable probability that [his] convictions are for allied offenses of similar import committed with the same conduct and without a separate animus[.]" *Id. But see State v. Cepec*, 149 Ohio St.3d 438, 2016-Ohio-8076, ¶ 67 (explaining that, to constitute plain error, "[t]he alleged error must have 'substantially affected the outcome of the trial,' such that 'but for the error, the outcome of the trial clearly would have been otherwise[.]'"), quoting *State v. Slagle*, 65 Ohio St.3d 597, 605 (1992); *State v. Long*, 53 Ohio St.2d 91 (1978), paragraph two of the syllabus.

{¶18} Revised Code Section 2941.25 "is the primary indication of the General Assembly's intent to prohibit or allow multiple punishments for two or more offenses resulting from the same conduct" and is "an attempt to codify the judicial doctrine of merger[.]" *State v. Washington*, 137 Ohio St.3d 427, 2013-Ohio-4982, ¶ 11. It provides:

> (A) Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one.
>
> (B) Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them.

R.C. 2941.25. In *State v. Ruff*, 143 Ohio St.3d 114, 2015-Ohio-995, the Ohio Supreme Court interpreted Section 2941.25(B), explaining:

> Under R.C. 2941.25(B), a defendant whose conduct supports multiple offenses may be convicted of all the offenses if any one of the following are true: (1) the

conduct constitutes offenses of dissimilar import, (2) the conduct shows that the offenses were committed separately, or (3) the conduct shows that the offenses were committed with separate animus.

*Id.* at paragraph three of the syllabus. It also explained that offenses are of dissimilar import under Section 2941.25(B) if they involved "separate victims or if the harm that results from each offense is separate and identifiable." *Id.* at paragraph two of the syllabus.

{¶19} Mr. Beech violated Section 2950.05 when he failed to notify the sheriff 20 days before he moved into the camper with T.W. He violated Section 2950.04 when he failed to register with the sheriff within three days of moving into the camper. Mr. Beech, therefore, committed the violations at different times, one before the move and one after the move. Because he committed the offenses separately, we conclude that he has not demonstrated a reasonable probability that his convictions were allied offenses. *See id.*; *Rogers*, 143 Ohio St.3d 385, 2015-Ohio-2459, at ¶ 3. Accordingly, we conclude that he has failed to establish plain error. Mr. Beech's third assignment of error is overruled.

III.

{¶20} Mr. Beech's assignments of error are overruled. The judgment of the Summit County Court of Common Pleas is affirmed.

Judgment affirmed.

————

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

JENNIFER HENSAL
FOR THE COURT

SCHAFER, P. J.
TEODOSIO, J.
CONCUR.

APPEARANCES:

NEIL P. AGARWAL, Attorney at Law, for Appellant.

SHERRI BEVAN WALSH, Prosecuting Attorney, and HEAVEN DIMARTINO, Assistant Prosecuting Attorney, for Appellee.