[Cite as *State v. Bibb*, 2020-Ohio-4670.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF MEDINA | ) | |

| STATE OF OHIO | | C.A. No. 19CA0078-M |
| | | |
| Appellee | | |
| | | |
| v. | | APPEAL FROM JUDGMENT |
| | | ENTERED IN THE |
| JONATHON L. BIBB | | COURT OF COMMON PLEAS |
| | | COUNTY OF MEDINA, OHIO |
| Appellant | | CASE No. 19CR0836 |

DECISION AND JOURNAL ENTRY

Dated: September 30, 2020

TEODOSIO, Judge.

{¶1} Defendant-Appellant, Jonathon Bibb, appeals from the judgment of the Medina County Court of Common Pleas. This Court affirms.

I.

{¶2} Mr. Bibb was convicted of having unlawful sexual contact with a minor and classified as a tier II sexual offender. Pursuant to his registration duties, he notified the relevant authorities that he would be living at an address in Cleveland. The authorities later discovered, however, that he was living with his girlfriend at a motel in Medina ("the motel"). He ultimately pleaded guilty to one count of failing to periodically verify his address and received two years of community control. He also was cautioned that he could not reside at the motel because it was located near a daycare center.

{¶3} A few months later, during the early morning hours, Mr. Bibb and his girlfriend were spotted walking in an area close to the motel. The sighting prompted a residency check and

investigation into Mr. Bibb's living arrangements. Based on that investigation, authorities concluded that he was once again residing at the motel in Medina, despite being registered to live in Cleveland. He was charged with one count of failing to register, in violation of R.C. 2950.04(E). Because he had a prior conviction for violating his registration duties, the offense was charged as a third-degree felony.

{¶4} A jury found Mr. Bibb guilty of failing to register. It further found that he had a prior conviction for violating his registration duties. The trial court sentenced him to three years in prison, and Mr. Bibb appealed.

{¶5} Mr. Bibb's appeal is now before this Court. His brief contains two assignments of error for our review.

II.

**ASSIGNMENT OF ERROR I**

THE JURY'S VERDICT OF GUILTY IS NOT SUPPORTED BY SUFFICIENT EVIDENCE. THE TRIAL COURT ERRED IN DENYING THE APPELLANT'S MOTION FOR ACQUITTAL.

{¶6} In his first assignment of error, Mr. Bibb argues that his conviction is based on insufficient evidence. Specifically, he argues that there was no evidence he resided or was temporarily domiciled in Medina County for at least three days, such that he had a duty to register with the sheriff. We disagree.

{¶7} Whether a conviction is supported by sufficient evidence is a question of law, which this Court reviews de novo. *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997). "Sufficiency concerns the burden of production and tests whether the prosecution presented adequate evidence for the case to go to the jury." *State v. Bressi*, 9th Dist. Summit No. 27575, 2016-Ohio-5211, ¶ 25, citing *Thompkins* at 386. "'The relevant inquiry is whether, after viewing the evidence in a

light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.'" *Id.*, quoting *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus. However, "we do not resolve evidentiary conflicts or assess the credibility of witnesses, because these functions belong to the trier of fact." *State v. Hall*, 9th Dist. Summit No. 27827, 2017-Ohio-73, ¶ 10.

{¶8} R.C. 2950.04 sets forth the registration requirements for convicted sexual offenders. Relevant to this appeal, an offender "shall register personally with the sheriff, or the sheriff's designee, of the county within three days of the offender's coming into a county in which the offender resides or temporarily is domiciled for more than three days." R.C. 2950.04(A)(2)(a). No person who is required to register in that manner shall fail to do so. R.C. 2950.04(E). Failing to register is a third-degree felony if an offender previously has been convicted of violating his registration duties and his underlying sexual offense is a fourth- or fifth-degree felony. R.C. 2950.99(A)(1)(b)(iii).

{¶9} A residence is distinguishable from a domicile. *See State v. Beech*, 9th Dist. Summit No. 29036, 2019-Ohio-120, ¶ 9. Unlike a domicile, a person may reside at a given place without a specific intention to make it their home. *Id.* at ¶ 9. A residence is simply a place where a person lives or has a "'bodily presence as an inhabitant'" for some time. *Id.*, quoting *Black's Law Dictionary* (10th Ed.2014). Thus, "'[a] person [] may have more than one residence at a time but only one domicile.'" *Beech* at ¶ 9, quoting *Black's Law Dictionary*.

{¶10} Mr. Bibb was charged with committing the offense of failing to register at some point between May 25, 2019 and July 30, 2019. It is undisputed that, during that period, he was registered to live at an address in Cleveland. The question for the jury was whether he either

resided or temporarily was domiciled in Medina County for more than three days during that same period.

{¶11} Nicole Jaklitch is the sexual offender registration administrator for the Medina County Sheriff's Office. She testified that she regularly meets with and monitors sexual offenders to ensure that they are complying with their registration duties. Offenders are required to provide the sheriff's office with their residential address as well as their place of employment, vehicle description, internet identifiers, and the names of any individuals with whom they reside. Ms. Jaklitch explained that, if an offender enters Medina County to reside or be temporarily domiciled there for more than three days, he must register with the Medina County Sheriff's Office within 72 hours of entering the county.

{¶12} Ms. Jaklitch was familiar with Mr. Bibb and his girlfriend because her office launched the investigation that resulted in his prior conviction for failing to periodically verify his address. She testified that she had contact with him after his conviction because he spoke with her about wanting to reside at the motel where he had been living with his girlfriend when he was arrested. According to Ms. Jaklitch, Mr. Bibb was "told several times that [he would] never be able to live there" because it was located too close to a daycare center.

{¶13} Around 6:25 a.m. on the morning of July 25, 2019, Ms. Jaklitch spotted Mr. Bibb and his girlfriend walking down the road in an area that was about 300 feet from the motel. She found his presence suspicious, given the time of day and his proximity to the motel. She knew that he started work at 7:00 a.m. and believed he might be walking to work from the motel. Consequently, she contacted a detective and asked him to conduct a residency check on Mr. Bibb.

{¶14} Detective Robert Locher spent the next week investigating Mr. Bibb's living arrangements. He first spoke with the manager of the motel. He discovered that, on July 18, 2019,

Mr. Bibb's girlfriend had signed an agreement to rent a room and Mr. Bibb was listed on the agreement as a visitor. Hoping to speak with Mr. Bibb, the detective went to his workplace, which was about a 20-minute walk from the motel. He learned that Mr. Bibb had called off, however, so he left and returned the following day. When he discovered that Mr. Bibb had once again called off, he returned to the motel and knocked on the door of Mr. Bibb's girlfriend's room.

{¶15} Detective Locher testified that it was about 10:45 a.m. when he knocked on the motel room door. He knocked a few times, and, after a minute, Mr. Bibb answered. The detective testified that it appeared as if he had woken Mr. Bibb and Mr. Bibb confirmed he had been sleeping. Even so, Mr. Bibb denied that he had spent the night at the motel. He told the detective that his cousin would bring him to the motel every morning from Cleveland, except for a few times when he had asked a friend for a ride. He would then get a ride home from either his cousin or a friend. Mr. Bibb indicated that he knew he was not allowed to stay overnight at the motel. He told the detective that he had only stayed there when someone robbed him at his Cleveland address. According to Mr. Bibb, his probation officer was aware of that situation and knew he was staying at the motel at that time.

{¶16} Lindsay Lesko testified that she was Mr. Bibb's probation officer and responsible for supervising him on a regular basis. On June 11, 2019, she met with Mr. Bibb, and he informed her that someone had robbed him at his residence in Cleveland a few days earlier. Ms. Lesko was aware that Mr. Bibb did not want to return to his residence. He did not, however, tell her that he was staying somewhere else or that he was going to be changing his residence at that point. Ms. Lesko specifically denied that Mr. Bibb told her he was staying at the motel. It was her testimony that she discussed the motel with Mr. Bibb several times over the course of their regular meetings

and she repeatedly informed him that he could not live there because it was too close to a daycare center.

{¶17}  The owner of the motel testified that Mr. Bibb's girlfriend rented a room and that Mr. Bibb sometimes lived with her.  He testified that the girlfriend was the only one who paid the rent, but that she sometimes paid the higher weekly rate that tenants must pay when they have an overnight guest.  The owner believed Mr. Bibb sometimes lived at the motel for an entire week at a time because the girlfriend would pay the higher rate at that time.  Further, he confirmed that the room the girlfriend rented was more expensive than other rooms at the motel because it had two beds.

{¶18}  The State also called the motel's assistant manager as a witness.  He testified that Mr. Bibb was living with his girlfriend in one of the rooms, and it was his understanding that both were renting the room.  He explained that it would not have made sense for the owner to rent the room to a single tenant because it was the biggest room at the motel and cost more money than the rooms with single beds.  Further, he explained that the motel only charges its tenants additional fees for overnight guests.  He testified that the purpose of adding an individual's name to a rental agreement is to notify the manager that the individual will be there after 10:00 p.m. when all other visitors are required to leave.

{¶19}  The assistant manager testified that he had several interactions with Mr. Bibb in the motel room that his girlfriend rented, including when he went there to change a light bulb and when he installed an air conditioner around 6:00 or 7:00 p.m.  He testified that he frequently saw Mr. Bibb at the motel in the morning and, on one occasion, it was for five or six days in a row.  He also recalled an occasion when he had to let Mr. Bibb's girlfriend into her room because Mr. Bibb

had the room key. According to the assistant manager, Mr. Bibb's girlfriend moved into a smaller room within a day of Mr. Bibb's arrest.

{¶20} A resident of the motel also testified as a witness for the State. The resident could not recognize Mr. Bibb by sight in court, but testified that he was familiar with Mr. Bibb's girlfriend and knew her boyfriend had been living with her at the motel. He believed the boyfriend walked to work each day because he would leave early in the morning and return on foot sometime in the afternoon. He testified that he took four consecutive days off work near the end of June 2019, and he saw the boyfriend walking on each of those four days.

{¶21} As part of his investigation, Detective Locher retrieved recordings of several phone calls that Mr. Bibb made to his girlfriend from the jail in the wake of his arrest. In one of the calls, Mr. Bibb asked his girlfriend to look for some stamps. He said the stamps were in a wallet "at home" before immediately correcting himself and calling the motel "your place." He also later told his girlfriend that he wanted to "move outta Medina" and wanted her to do the same.

{¶22} Viewing the evidence in a light most favorable to the State, a rational trier of fact could have concluded that the State proved, beyond a reasonable doubt, that Mr. Bibb resided in Medina County for more than three days during the timeframe alleged in his indictment. *See Jenks*, 61 Ohio St.3d 259 at paragraph two of the syllabus. It is well established that "[c]ircumstantial evidence and direct evidence inherently possess the same probative value * * *." *Id.* at paragraph one of the syllabus. The State set forth a wealth of circumstantial evidence tending to show that Mr. Bibb lived at the motel with his girlfriend for some time. *See Beech*, 2019-Ohio-120, at ¶ 9. Many people saw him there or in the surrounding area, early in the morning, on many different days. Detective Locher found him sleeping in the room on at least one occasion, and the motel owner, assistant manager, and a resident were all under the impression that he lived there.

Moreover, while speaking with his girlfriend, Mr. Bibb specifically referred to the motel as "home" and later indicated that he wanted to move out of Medina. He also lied to the detective about telling his probation officer that he was staying at the motel. The evidence, when construed in a light most favorable to the State, was sufficient to sustain his conviction. *See State v. Knox*, 9th Dist. Lorain No. 17CA011233, 2019-Ohio-2265, ¶ 17-19. Accordingly, his first assignment of error is overruled.

## ASSIGNMENT OF ERROR II

THE JURY'S VERDICT IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶23} In his second assignment of error, Mr. Bibb argues that his conviction is against the manifest weight of the evidence. We do not agree.

{¶24} This Court has stated:

In determining whether a criminal conviction is against the manifest weight of the evidence, an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.

*State v. Otten*, 33 Ohio App.3d 339, 340 (9th Dist. 1986). "[W]hen reversing a conviction on the basis that it was against the manifest weight of the evidence, an appellate court sits as a 'thirteenth juror,' and disagrees with the factfinder's resolution of the conflicting testimony." *State v. Tucker*, 9th Dist. Medina No. 06CA0035-M, 2006-Ohio-6914, ¶ 5. This discretionary power "should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." *State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997), quoting *State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist. 1983). *See also Otten* at 340.

{¶25} Mr. Bibb's cousin testified that he used to live with his girlfriend in a house in Cleveland and Mr. Bibb would rent out his basement for $75 a week. Because he worked several 12-hour shifts per week in Medina, the cousin said he would drive Mr. Bibb to Medina in the morning and would sometimes take him home at the end of his shift. He testified that, even when he did not drive Mr. Bibb home, he believed he was home each evening because he would hear noises coming from the basement. Even so, he admitted that he spent a lot of time away from home in July 2019 because his girlfriend went to stay in Medina. While being interviewed, he specifically told Detective Lochner that he was "never home" once his girlfriend moved out.

{¶26} Mr. Bibb's girlfriend testified that she rented a room at the motel in April 2019. She claimed that she had rented a smaller room, but was forced to change to a larger room when her first room flooded. She agreed that Mr. Bibb was listed as a visitor on her rental agreement and that she paid the additional fees for having a guest, but denied that he ever stayed over. She claimed that she paid the additional fees because it was cheaper than the payment penalty she would have incurred if management felt she had hosted an overnight guest without paying. She acknowledged that Mr. Bibb was frequently at the hotel, but maintained that he never stayed past 10:00 p.m.

{¶27} The girlfriend conceded that she moved to a smaller room after Mr. Bibb's arrest, but claimed that decision had something to do with the owner and that she was "not actually too sure why [he] wanted [her] to change rooms." She repeatedly used the pronoun "we" when describing who lived in her motel room and agreed with the prosecutor's observation that she kept "going back and forth between me and we * * *." Moreover, she admitted that her testimony was different in several respects from the statement she gave Detective Lochner when he interviewed her. She claimed that several of the things she told the detective were not accurate because, when

she spoke with him, she was nervous that she was going to lose her job. She also admitted that she lied to him about certain details because she did not want Mr. Bibb to get in trouble.

{¶28} Mr. Bibb testified that he lived in his cousin's basement, paid rent, and kept his few belongings there. He denied that he ever lived at the motel, apart from the time that led to his prior conviction for failing to periodically verify his address. According to Mr. Bibb, his cousin would drive him to Medina in the mornings a few times a week and some friends would drive him on the other days. He claimed that his cousin or a friend would drop him off nearby the motel and he would either visit with his girlfriend for a short while before walking to work or walk directly to work from the area where they dropped him off.

{¶29} Mr. Bibb admitted that Detective Lochner found him sleeping at the motel, but claimed that he had arrived there earlier that morning before calling off work. He acknowledged that he kept work clothes at the motel, but claimed that he did so because he might change there before going back to Cleveland each evening. Mr. Bibb testified that he lied to the detective about several things because the detective never identified himself as "an actual sheriff or probation officer." Absent that identification, Mr. Bibb testified, he did not feel that he owed the detective an accurate explanation. He also testified that, when he said he stayed at the motel on one occasion, he meant that he stayed there a few hours, not overnight. Likewise, he explained his reference to the motel room as "home" in his jail call by stating that it felt like he lived at the motel even though he did not.

{¶30} Having reviewed the record, we cannot conclude that the jury clearly lost its way when it concluded that Mr. Bibb resided in Medina County for more than three days during the timeframe alleged in his indictment. *See Otten*, 33 Ohio App.3d at 340. The jury heard competing testimony and was "in the best position to determine the credibility of witnesses and evaluate their

testimony accordingly." *State v. Johnson*, 9th Dist. Summit No. 25161, 2010-Ohio-3296, ¶ 15. It was not unreasonable for the jury to reject Mr. Bibb's version of the events, given that he and his girlfriend admitted that they lied at various points during the investigation. This Court has repeatedly held that "[a] verdict is not against the manifest weight of the evidence because the finder of fact chose to believe the State's witnesses rather than the defendant's version of the events." *State v. Martinez*, 9th Dist. Wayne No. 12CA0054, 2013-Ohio-3189, ¶ 16. Upon review, Mr. Bibb has not shown that this is the exceptional case where the jury lost its way by convicting him. *See Otten* at 340. Accordingly, his second assignment of error is overruled.

III.

{¶31} Mr. Bibb's assignments of error are overruled. The judgment of the Medina County Court of Common Pleas is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Medina, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

THOMAS A. TEODOSIO
FOR THE COURT

CARR, P. J.
HENSAL, J.
CONCUR.

APPEARANCES:

DAVID C. SHELDON, Attorney at Law, for Appellant.

S. FORREST THOMPSON, Prosecuting Attorney, and VINCENT V. VIGLUICCI, Assistant Prosecuting Attorney, for Appellee.